1
2
3
4
5

**UMHOFER, MITCHELL & KING LLP**
Matthew Donald Umhofer (SBN 206607)
Jonas P. Mann (SBN 263314)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: 213-394-7979
Facsimile:  213-529-1027
matthew@umklaw.com
jonas@umklaw.com

6
7

*Attorneys for Petitioners Stephanie Jones
and Jonesworks LLC*

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| *IN RE: SUBPOENAS TO META PLATFORMS, INC. AND PINTEREST, INC.*<br><br>Served in case: *Jones, et al. v. Abel, et al.*, S.D.N.Y. 1:25-cv-00779-UA | Misc. Case Number: 5:25-mc-80165<br><br>**PETITIONERS STEPHANIE JONES AND JONESWORKS LLC'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONDENTS META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA; MEMORANDUM IN SUPPORT**<br><br>Date:    TBD<br>Time:    TBD<br>Ctrm:    TBD |

19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

NOTICE OF MOTION AND MOTION .......................................................... 1

STATEMENT OF RELIEF REQUESTED........................................................ 2

STATEMENT OF THE ISSUE TO BE DECIDED ........................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 3

I.     INTRODUCTION .................................................................................. 3

II.    FACTUAL BACKGROUND ................................................................. 4

III.   PROCEDURAL BACKGROUND ......................................................... 7

IV.    LEGAL STANDARD ............................................................................ 8

V.     ARGUMENT...................................................................................... 10

 A. The Court Should Enforce the Subpoenas Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure .......................................... 10

 B. The Court Should Reject the First Amendment Objections to the Subpoenas Because the Subscriber Information Sought is Not Protected by the First Amendment............................................... 11

 C. Even Assuming *Arguendo* that First Amendment Concerns Are Implicated Here, the Court Should Enforce the Subpoenas Because Petitioners Have Made a Prima Facie Showing of Their Claims and Balancing of Interests Requires Enforcement of the Subpoenas ............... 13

  1. The Account Holders Have Been Notified ...................................... 13

  2. Petitioners Have Made a Prima Facie Showing of Their Defamation Claims .......................................................... 13

  3. Balancing of the Interests Between Discloser and Maintaining Anonymity Requires Enforcement of the Subpoena ....................... 16

VI.    CONCLUSION ................................................................................... 17

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

7 N.Y.3d 804, 854 N.E.2d 1268 (2006)............................................................................14

8 N.Y.3d 359, 866 N.E.2d 439 (2007)..............................................................................14

Art of Living Found. v. Does 1-10,
    No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)....................17

Beluga Shipping GMBH & Co. KS BELUGA FANTASTIC v. Suzlon Energy Ltd.,
    Misc. Case No. C 10–80034, 2010 WL 3749279 (N.D. Cal. Sept. 23, 2010)...........10

Call of the Wild Movie, LLC v. Smith,
    274 F.R.D. 334 (D.C. 2011) .....................................................................................17

Chevron Corp. v. Donziger,
    No. 12–MC–80237 CRB, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ................12

Dillon v. City of New York,
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) ....................................................14

Edwards v. Cal. Dairies, Inc.,
    No. 14–mc–00007, 2014 WL 2465934 (E.D. Cal. June 2, 2014)...............................8

EEOC v. Children's Hosp. Med. Ctr.,
    719 F.2d 1426 (9th Cir. 1983) ....................................................................................9

Fed. Trade Comm'n v. DIRECTV, Inc.,
    Case No. 15-cv-01129, 2015 WL 8302932 (N.D. Cal. Dec. 9, 2015).......................9

Gargiulo v. Forster & Garbus, Esqs.,
    651 F.Supp.2d 188 (S.D.N.Y. 2009).........................................................................14

Garrett v. City & County of San Francisco,
    818 F.2d 1515 (9th Cir. 1987) ....................................................................................9

Grayson v. Ressler & Ressler,
    271 F. Supp. 3d 501 (S.D.N.Y. 2017).................................................................15, 16

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

In re Anonymous Online Speakers,

   661 F.3d 1168 (9th Cir. 2011) ...................................................................17

In re DMCA § 512(h) Subpoena to Twitter, Inc.,

   608 F. Supp. 3d 868 (N.D. Cal. 2022) ...............................................13, 17

In re Williams-Sonoma, Inc.,

   947 F.3d 535 (9th Cir. 2020) .....................................................................9

Kirch v. Liberty Media Corp.,

   449 F.3d 388 (2d Cir. 2006) ....................................................................15

Krinsky v. Doe 6,

   159 Cal. App. 4th 1154 (2008) ................................................................13

Laguerre v. Maurice,

   192 A.D.3d 44, 138 N.Y.S.3d 123 (2020) ..............................................14

London v. Does 1-4,

   279 F. App'x 513 (9th Cir. 2008)............................................................12

Music Grp. Macao Com. Offshore Ltd. v. Does,

   82 F. Supp. 3d 979 (N.D. Cal. 2015) ......................................................17

Obi Pharma, Inc., v. Does 1-20,

   No. 16CV2218 H (BGS), 2017 WL 1520085 (S.D. Cal. Apr. 27, 2017) ...........14, 17

Obodai v. Indeed, Inc.,

   No. 13–80027–MISC, 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013) ......................10

O'Grady v. Superior Ct.,

   139 Cal. App. 4th 1423 (2006) ................................................................10

People of State of Cal. v. F.C.C.,

   75 F.3d 1350 (9th Cir. 1996).....................................................................12

Realtek Semiconductor Corp. v. LSI Corp.,

   Case No. 14–mc–80197, 2014 WL 4365114 (N.D. Cal. Sept. 3, 2014).................8, 9

Restis v. Am. Coal. Against Nuclear Iran, Inc.,

   53 F.Supp.3d 705 (S.D.N.Y. 2014)..........................................................15

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

Rosenberg v. Metlife, Inc.,
  453 F.3d 122 (2d Cir.) ................................................................................ 14
Smythe v. Does 1-10,
  No. CV 15-4801-R, 2015 WL 12819173 (C.D. Cal. Sept. 25, 2015) ........................ 13
Smythe v. Does 1-10,
  No. CV 15-4801-R, 2015 WL 12819174 (C.D. Cal. Nov. 17, 2015) ........................ 17
Smythe v. Does,
  No. 15-MC-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) .......................... 17
Thai v. Cayre Grp., Ltd.,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ...................................................... 14
Tomlinson v. United Behav. Health,
  Case No. 19-cv-06999, 2020 WL 2850182 (N.D. Cal. June 2, 2020) ...................... 9
United States v. Meta Platforms, Inc.,
  No. 23-MC-80249-PHK, 2023 WL 8438579 (N.D. Cal. Dec. 5, 2023) .................... 12

**Statutes**
18 U.S.C. § 2702(c)(6) ........................................................................ 9, 10

**Rules**
Fed. R. Civ. P. 26(b)(1) ...................................................................... 9
Fed. R. Civ. P. 26(b)(2) ...................................................................... 9
Fed. R. Civ. P. 45(a)(1)(D) .................................................................. 8
Fed. R. Civ. P. 45(d)(2)(B)(i) .............................................................. 9
Rule 37 ............................................................................................ 1
Rule 45 of the Federal Rules of Civil Procedure .................................... 8
Rules 26 and 45 of the Federal Rules of Civil Procedure ............... i, 1, 2, 10

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

1

## NOTICE OF MOTION AND MOTION

2  TO ALL PARTIES, RESPONDENT META PLATFORMS, INC.,

3 RESPONDENT PINTEREST, INC., AND COUNSEL OF RECORD:

4  **PLEASE TAKE NOTICE** that, as soon as counsel may be heard before the

5 assigned judge at the assigned time, Petitioners Stephanie Jones and Jonesworks LLC

6 ("Petitioners"), will and hereby do move this Court for an Order compelling Respondents

7 Meta Platforms, Inc. ("Meta") and Pinterest, Inc. ("Pinterest") (collectively

8 "Respondents") to comply with Petitioners' Subpoenas originally served on Meta on

9 March 7, 2025, and on Pinterest on March 11, 2025 ("Subpoenas").

10  This Motion to Compel is brought pursuant to Rules 26, 37, and 45 of the Federal

11 Rules of Civil Procedure, and the applicable Local Rules of this Court, on the grounds

12 that counsel for Petitioners and Respondents met and conferred in good faith, pursuant to

13 Civil Local Rule 37, but were unable to resolve Respondents' objections. Specifically,

14 Respondents state that they will not comply with the Subpoena seeking the subscriber

15 information for a user account absent a Court Order directing compliance.

16  This Motion to Compel is based on this Notice of Motion and Motion, as well as

17 the following Memorandum in Support, the accompanying Declaration of Jonas P. Mann

18 ("Mann Decl.") and all exhibits thereto, Declaration of Stephanie Jones and all exhibits

19 thereto, all cited authorities, all files and records in the underlying litigation currently

20 pending in the United States District Court for the Southern District of New York, Jones,

21 et al. v. Abel, et al., 1:25-cv-00779-UA, any additional matters as may be judicially noticed

22 by the Court, and on the oral argument and any other evidence that may come before the

23 Court prior to or during any hearing on this Motion to Compel.

24

25

26

27

28

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND*
*PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

## STATEMENT OF RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure, Rules 26, 37, and 45, Petitioners respectfully requests an order requiring Meta and Pinterest to comply with the Subpoenas served on them in the underlying litigation pending in the United States District Court for the Southern District of New York, <u>Jones, et al. v. Abel, et al.</u>, 1:25-cv-00779-UA.

Dated: June 25, 2025

Respectfully submitted,

**UMHOFER, MITCHELL & KING LLP**

By:   /s/ *Matthew Donald Umhofer*
      Matthew Donald Umhofer
      Jonas P. Mann

*Attorneys for Petitioners Stephanie Jones and Jonesworks LLC*

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether this Court should enforce Petitioners' Subpoenas to third-parties Meta and Pinterest, which seek limited and specific subscriber information about Facebook and Pinterest accounts related to Petitioners' claims in an underlying lawsuit pending in the United States District Court for the Southern District of New York, <u>Jones, et al. v. Abel, et al.</u>, 1:25-cv-00779-UA.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Petitioners Stephanie Jones and Jonesworks LLC are the victims of a coordinated, multi-prong, smear campaign falsely portraying Jones as someone who would betray her clients' trust and publicly leak their information to further her own interest. This is completely false and this campaign has been damaging to Jones and her business. As part of this defamation campaign, individuals whose true identities are unknown to Petitioners created multiple defamatory websites – stephaniejoneslies.com and stephaniejonesleaks.com – and social media accounts promoting those websites, including a Facebook account under the name "Stephanie Jones" and a Pinterest account with the user name "stephaniejonesleaks."

The bio for the Facebook account falsely states "Stephanie Jones serves legal letters based on trumped up claims. She resorts to threats both personal and professional." The bio for the Pinterest account falsely states "Stephanie Jones is known to leak information about her clients to the press, so that she can 'save the day' for them and inspire their gratitude." Both the Facebook and Pinterest accounts share a logo with and link to a website called stephaniejonesleaks.com, which contains even more detailed false and defamatory allegations. The Facebook account also links back to the Pinterest account and a YouTube account with the username "stephaniejonesleaks." These interconnected websites and social media accounts were created in a coordinated campaign to defame Jones and her business.

The social media accounts and other defamatory websites and accounts appeared

3

during May 2024. Around that time and in the subsequent months, Jones' former employee, Jennifer Abel, with the apparent assistance of Melissa Nathan from The Agency Group PR, was secretly working against Jones and Jonesworks while she planned to open her own, competing public relations business.

Petitioners served valid subpoenas on Respondents seeking basic user account information identifying who created the defamatory accounts. Respondents objected, including on First Amendment grounds and refused to respond to the Subpoenas.

Two non-parties, Breanna Butler Koslow and Katherine Case, also served vague objections that the Subpoenas—which seek only information regarding who created the false and abusive Facebook and Pinterest accounts and, by extension, the websites—called for their "personal information." This could only conceivably be the case if their personal information were linked to the accounts requested by the subpoena. Ms. Koslow and Ms. Case are or have been employees of The Agency Group PR, a public relations agency run by Melissa Nathan, a party in the underlying suit who has denied knowledge of who created the profiles or websites. Ms. Case was an employee of Jonesworks prior to being hired by The Agency Group PR. Counsel for Ms. Butler and Ms. Case would not confirm or deny whether they created the profiles and websites.

The objections are meritless, and the Court should order compliance with the Subpoenas. Users have no First Amendment protection for account ownership information. Even if the Court were to apply the First Amendment scrutiny requested by Respondent, Petitioners have established a prima facie case for defamation and the balancing of interests weighs heavily in favor of Petitioners.

Petitioners respectfully request the Court order Respondents to comply with the Subpoenas.

## II.    FACTUAL BACKGROUND

Plaintiff Stephanie Jones is a highly respected public relations expert who focuses on corporate and personal publicity. (Declaration of Jonas P. Mann in Support of Petitioners' Motion to Compel Compliance with Subpoena ("Mann Decl."), Ex. 1,

Complaint ("Compl.") ¶ 2; Declaration of Stephanie Jones in Support of Petitioners' Motion to Compel Compliance with Subpoena ("Jones Decl.") ¶¶ 1-2.) Through her company, Plaintiff Jonesworks LLC, Jones represents many high-profile, celebrities, athletes, companies, and businesspeople. (Id.)

The underlying case arises from the duplicitous conduct of one of Jones' former employees, Defendant Jennifer Abel, who along with crisis management fixer, Defendant Melissa Nathan, and Defendants Justin Baldoni and Wayfarer Studios LLC, and additional presently unknown individuals, secretly conspired for months to publicly and privately attack Jones and Jonesworks, defame both, breach multiple contracts, and steal clients and business prospects. (Compl. ¶ 1.) Baldoni produced, directed, and co-starred in the film It Ends With Us. (Id. ¶ 3.) In connection with the Film's release, Baldoni feared that allegations of misogynistic and toxic behavior on set could become public and damage his reputation and career. (Id.) Baldoni and Wayfarer's CEO Jamey Health turned to Abel, who at the time was an employee of Jonesworks and had become the point person on the Baldoni and Wayfarer account. (Id.) Abel then brought on Defendant Nathan, a well-known "crisis fixer," against the express instructions of Jones. (Id.) Abel and Nathan, with Health's encouragement, worked to shut Jones out of the process and hide their strategy from her, despite Abel still working under the auspices of Jonesworks. (Id.)

Abel and Nathan schemed to "bury" and "destroy" Baldoni's co-star, Blake Lively, in order to protect Baldoni. (Id. ¶ 4.) This was concealed from Jones and far outside the scope of Abel's employment. (Id.) Simultaneously, Abel and Nathan worked to harm Jones' reputation, steal her clients, and enrich themselves in preparation for Abel's planned departure from Jonesworks. (Id.) While working to protect Baldoni (despite privately holding him in very low regard), Abel and Nathan sought to plant negative stories about Jones and Jonesworks. (Id. ¶¶ 5–7.) Abel and Nathan coordinated with Business Insider reporter Katie Warren, resulting in an August 2024 article titled, "Who's Afraid of Stephanie Jones?" (Id. ¶ 7.) The Business Insider article was highly critical of Jones and boosted the disparaging website "stephaniejonesleaks.com," which had recently

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

been posted by the John Doe Defendants, accusing Jones of having a reputation for aggression and having been dropped by high-profile clients (Id. ¶ 88.) Abel facilitated Warren's outreach to Jones' former clients in order to further disrupt Jonesworks' business and negatively influence coverage. (Id. ¶ 8.) Abel and Nathan privately celebrated the publication of the article, which they referred to as a "kill story." (Id. ¶¶ 9–10.) As her planned departure from Jonesworks neared, Abel boasted to Nathan about the damage she was doing to Jonesworks and Abel and Nathan conspired to ensure that Baldoni and Wayfarer would leave Jonesworks for Abel's planned new firm. (Id. ¶¶ 11–12.)

Once Jones became aware of Abel's theft of company documents in August 2024, Abel was terminated. (Id. ¶ 13.) However, at that point, Abel had already stolen proprietary and sensitive business documents and client leads from Jonesworks. (Id.) Baldoni and Wayfarer departed as clients with Abel, who set up her own competing firm. (Id.) Abel and Nathan's covert take down and smear campaigns were further revealed on Abel's company-issued phone, which Jonesworks recovered upon her departure. (Id. ¶ 14.) Abel even boasted about her theft of company documents. When asked "[d]id you get everything you needed" before Jones disabled Abel's access to Jonesworks' computers, Abel replied "[y]es pretty much. I have my way around that shit because I have like 100s of different emails for each domain that I own so she can suck it." (Id. ¶ 98.)

In addition to the Business Insider article, Jones discovered numerous social media accounts devoted to defaming her and boosting the defamatory stephaniejonesleaks.com website. The Facebook account at issue here further boosted the stephaniejonesleaks.com website. The Facebook account's profile falsely states "Stephanie Jones serves legal letters based on trumped up claims. She resorts to threats both personal and professional." The Pinterest account's profile falsely states that Stephanie Jones is known to leak information about her clients to the press, so that she can 'save the day' for them and inspire their gratitude." Both of these allegations are false, as are the allegations in the websites. (Jones Decl. ¶¶ 3-9.)

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

To date, Petitioners have been unable to determine the identity of the creators of the Facebook account at issue. (Id. ¶ 10.)

## III.    PROCEDURAL BACKGROUND

On March 7, 2025, Petitioners served a subpoena on Meta, to determine ownership and creation details of the defamatory "Stephanie Jones" Facebook account. (Mann Decl. Ex. 2.) The subpoena contained a single request for documents:

**REQUEST FOR PRODUCTION NO. 1:**

All basic user information regarding the Facebook account at https://www.facebook.com/people/Stephanie-Jones/61559205100286/ including the user's name, physical address, phone number, e-mail address, and account login and usage history (including IP addresses and user location data).

On March 19, 2025, counsel for Meta served objections. (Mann Decl. Ex. 3.) Counsel for Jones and Meta met and conferred regarding Meta's responses on March 27, 2025. Meta indicated that it would stand on its refusal to respond. (Mann Decl. ¶ 10.)

On March 11, 2025, Petitioners served a subpoena on Pinterest, to determine ownership and creation details of the defamatory "stephaniejonesleaks" Pinterest account. (Mann Decl. Ex. 4.) The subpoena contained three requests for documents from Pinterest:

**REQUEST FOR PRODUCTION NO. 1:**

All communications and documents between Pinterest, Inc. and the owner of the account "stephaniejonesleaks" including but not limited to any principal, agent, or employee of the owner of the account, or its affiliates.

**REQUEST FOR PRODUCTION NO. 2:**

Any agreement entered into between Pinterest, Inc. and the owner of the account "stephaniejonesleaks" including but not limited to any Terms of Service or License Agreement.

**REQUEST FOR PRODUCTION NO. 3:**

All subscriber information for the account "stephaniejonesleaks" including but not

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

limited to: (a) the name(s), address(es), telephone number(s), and email address(es) provided during the registration process (b) any identification documents, verification materials, or correspondence submitted in connection with the account's registration or verification, and; (c) any documents reflecting changes to account registration details over time.

(Id.) The subpoena requested compliance by April 1, 2025. (Id.) On March 21, 2025, counsel for Pinterest served objections. (Mann Decl. Ex. 5.) Counsel for Jones and Pinterest met and conferred regarding Pinterest's responses on March 28 and May 19, 2025. Pinterest indicated that it would stand on its refusal to provide information regarding the identity of the user who created the "stephaniejonesleaks" account. (Mann Decl. ¶ 11.)

Counsel for two non-parties, Breanna Butler Koslow and Katherine Case, who work or have worked for The Agency Group PR, run by Melissa Nathan, also served objections to these subpoenas stating, "based upon our review of these subpoenas, they solicit private and personal identifying information of our clients. As a result, we object to the subpoenas to the extent they call for the production of our clients' personal data." (Mann Decl. Exs. 6 and 7.) During a call on April 1, 2025, counsel for the non-parties would not confirm or deny if Koslow or Case created the accounts at issue. (Mann Decl. ¶ 12.)

## IV.    LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure provides the framework for obtaining discovery from a third-party through issuance of a subpoena. Fed. R. Civ. P. 45(a)(1)(D). "It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)." Realtek Semiconductor Corp. v. LSI Corp., Case No. 14–mc–80197, 2014 WL 4365114, at *1 (N.D. Cal. Sept. 3, 2014) (citing Edwards v. Cal. Dairies, Inc., No. 14–mc–00007, 2014 WL 2465934, at *1 (E.D. Cal. June 2, 2014)). "[R]elevancy under Rule 26 is extremely broad." In re Williams-Sonoma, Inc., 947 F.3d 535, 542 n.1 (9th Cir. 2020) (Paez, J. dissenting). "Rule 26(b) authorizes

parties to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" <u>Realtek Semiconductor Corp.</u>, 2014 WL 4365114, at *1 (quoting Fed. R. Civ. P. 26(b)(1)). It "is considerably broader than relevance for trial purposes." <u>Tomlinson v. United Behav. Health</u>, Case No. 19-cv-06999, 2020 WL 2850182, at *3 (N.D. Cal. June 2, 2020) (quoting <u>Fed. Trade Comm'n v. DIRECTV, Inc.</u>, Case No. 15-cv-01129, 2015 WL 8302932, at *3 (N.D. Cal. Dec. 9, 2015)).

"At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i); <u>see also</u> Fed. R. Civ. P. 26(b)(1) (indicating a court may compel a non-party to produce documents and information pursuant to a subpoena regarding any "non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]").

On a motion to compel compliance, the moving party is to "detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." N.D. Cal. Civ. R. 37-2. The Court has discretion to determine whether to grant a motion to compel. <u>See</u> <u>Garrett v. City & County of San Francisco</u>, 818 F.2d 1515, 1519 (9th Cir. 1987). "When . . . '[t]he evidence sought by the subpoena [is] not plainly incompetent or irrelevant to any lawful purpose' it should [be] enforced." <u>EEOC v. Children's Hosp. Med. Ctr.</u>, 719 F.2d 1426, 1429 (9th Cir. 1983) (citation omitted), <u>overruled on other grounds by</u> <u>U.S. Equal Emp. Opportunity Comm'n v. McLane Co.</u>, 804 F.3d 1051 (9th Cir. 2015).

Finally, of relevance here, the Stored Communications Act ("SCA") permits service providers to disclose subscriber information. <u>See</u> 18 U.S.C. § 2702(c)(6) ("A provider described in subsection (a) may divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any person other than a governmental entity."). "The SCA permits service providers to divulge subscriber information 'to any person other than a governmental entity.' For that reason, a subpoena may be permissible

if it seeks the identity of specific emails or accounts." <u>Obodai v. Indeed, Inc.</u>, No. 13–80027–MISC, 2013 WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013) (quoting 18 U.S.C. § 2702(c)(6)) (citing <u>Beluga Shipping GMBH & Co. KS BELUGA FANTASTIC v. Suzlon Energy Ltd.</u>, Misc. Case No. C 10–80034, 2010 WL 3749279 (N.D. Cal. Sept. 23, 2010); <u>O'Grady v. Superior Ct.</u>, 139 Cal. App. 4th 1423, 1447 (2006), <u>as modified</u> (June 23, 2006)).

## V.    ARGUMENT

Petitioners have established the relevance of the information sought in the Subpoenas to the claims in the underlying litigation in New York. Accordingly, the Court should enforce the Subpoenas and order Respondents to comply. The objections, including the First Amendment objections, raised by Respondents are of no moment. The Subpoenas requests user information, which is not subject to First Amendment protection. Even if the Court subjected the requests to First Amendment scrutiny, Petitioners have established a prima facie case for defamation. The Facebook and Pinterest accounts make false and damaging statements that Jones leaks her own clients' information for her own benefit, this is a defamatory statement under New York law. Both accounts further promote a defamatory website with even more detailed false allegations about Petitioners. A balancing of the competing interests weighs heavily in favor of Petitioners.

### A.    The Court Should Enforce the Subpoenas Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure

The limited information sought from Respondent is obviously relevant to Petitioners' claims in the underlying New York litigation and is not sought for any improper or harassing purpose; accordingly, Petitioners' motion should be granted. Petitioners are the victims of a multi-pronged smear campaign orchestrated at least in part by a former employee, a former client, a competitor, and the other defendants. This campaign involved the creation of many social media accounts, including the Facebook and Pinterest accounts at issue here. Petitioners are unaware of the true identities of the individuals who created these accounts and thus the only way to obtain that information

is from Respondents. These are minimally burdensome requests for Respondents.

First, both Meta and Pinterest's objections concede that they are subject to jurisdiction in this Court based on their headquarters in San Francisco and Menlo Park, respectively. Second, both Respondents argue that Petitioners have an obligation to the seek to obtain the subscriber information from parties before subpoenaing non-parties, but Petitioners have already received answers that state Defendants did not create the websites. In the Complaint, Petitioners allege:

> In parallel with these articles, John Does 1-10, who, on information and belief, were acting in concert with Abel and Nathan, published two false and defamatory websites about Jones and Jonesworks (the "Websites"). First, in the summer of 2024, the Doe Defendants created and posted the webpage www.stephaniejonesleaks.com, which was hosted by Hostinger International Ltd. Then, after that website was taken down, in or around September 2024, the Doe Defendants created and posted the webpage www.stephaniejoneslies.com, which is hosted by NameCheap, Inc., and still remains publicly available. Both Websites were viewed, and continue to be viewed, by numerous third parties, including residents of New York County.

(Mann Decl. Ex. 1, ¶ 92.) In their answers, all Defendants either denied creating the websites or stated they lacked sufficient information to admit or deny. (Mann Decl. Ex. 8-11, ¶ 92.)

**B.     The Court Should Reject the First Amendment Objections to the Subpoenas Because the Subscriber Information Sought is Not Protected by the First Amendment**

Respondents' First Amendment objections are unfounded and should be rejected. Petitioners' requests are for basic account user information. The Ninth Circuit has repeatedly held that the First Amendment does not protect subscriber information from discovery.

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*

1     The Ninth Circuit held that the First Amendment does not protect the subscriber
2     information of an anonymous speaker. See London v. Does 1-4, 279 F. App'x 513, 515
3     (9th Cir. 2008). In London, the appellants "appeal[ed] the district court's denial of
4     motions to quash a subpoena issued to Yahoo!, Inc. ('Yahoo!') to obtain information
5     regarding five Yahoo! Email accounts," including "the names, addresses, and telephone
6     numbers provided by the users of the five email accounts." Id. at 514. The Ninth Circuit
7     rejected the appellants' contention that the district court's decision violated any First
8     Amendment rights, holding that "exposure of some identifying data does not violate the
9     First Amendment [and] because a legal privilege was not implicated, the district court
10    properly denied the motions to quash the subpoena." Id. at 515–16 (citing People of State
11    of Cal. v. F.C.C., 75 F.3d 1350, 1362 (9th Cir. 1996)).

12        Consistent with London, district courts routinely authorize subpoenas seeking
13    subscriber information of an anonymous account, finding such subpoenas do not
14    implicate First Amendment issues. See United States v. Meta Platforms, Inc., No. 23-
15    MC-80249-PHK, 2023 WL 8438579, at *7 (N.D. Cal. Dec. 5, 2023) (declining to find
16    "the anonymous speakers are entitled to First Amendment protections," when the
17    subpoena "d[id] not seek the contents of any communications associated with" the
18    anonymous accounts and only requested "the names, birth dates, telephone numbers,
19    email addresses, and IP addresses for the individual(s) who controlled" the accounts);
20    Chevron Corp. v. Donziger, No. 12–MC–80237 CRB, 2013 WL 4536808, at *6 (N.D.
21    Cal. Aug. 22, 2013) (holding right to anonymous speech was not implicated by plaintiff's
22    subpoenas that sought "subpoenas do not seek the content of any electronic
23    communication. They seek the identifying information of the email address owner…").

24        "Discovery relating to deciphering and identifying the identities of the individual
25    or individuals who took such action complained of by Plaintiff is essential to this case.
26    Basic subscriber information, the purpose of which is to identify potential defendants, is
27    permissibly discoverable. While the First Amendment provides some rights regarding
28    anonymity, it is not a blanket shield from liability under the law for all speech." Smythe

PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND
PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA

v. Does 1-10, No. CV 15-4801-R, 2015 WL 12819173, at *2 (C.D. Cal. Sept. 25, 2015).

### C. Even Assuming *Arguendo* that First Amendment Concerns Are Implicated Here, the Court Should Enforce the Subpoenas Because Petitioners Have Made a Prima Facie Showing of Their Claims and Balancing of Interests Requires Enforcement of the Subpoenas

To the extent the Court finds the requests in the Subpoenas implicate First Amendment rights for anonymous speech, Petitioners have made a prima facie showing of their claims and the balancing of interests requires enforcement of the Subpoenas.

> [W]hen adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should (1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim.

In re DMCA § 512(h) Subpoena to Twitter, Inc., 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022). An analysis of the three factors supports enforcement of the Subpoenas.

#### 1. The Account Holders Have Been Notified

Respondents, and two other non-parties, Breanna Butler Koslow and Katherine Case, served objections to the subpoena. It can reasonably be inferred that Respondents notified the creators of the Facebook and Pinterest accounts at issue who then served non-party objections (but refused to confirm their role in creating the account). Krinsky v. Doe 6, 159 Cal. App. 4th 1154, 1171 (2008) ("[W]hen ISPs and message-board sponsors … themselves notify the defendant that disclosure of his or her identity is sought, notification by the plaintiff should not be necessary.").

#### 2. Petitioners Have Made a Prima Facie Showing of Their Defamation Claims

To make a *prima facie* showing, Petitioners must "persuade the court that there is

13

a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff," by "adduc[ing] competent evidence of each fact that is essential to at least one of its causes of action." Obi Pharma, Inc., v. Does 1-20, No. 16CV2218 H (BGS), 2017 WL 1520085, at *4 (S.D. Cal. Apr. 27, 2017). Here, as set forth above, the subscriber information sought relates to Petitioners' claims in the SDNY Lawsuit for defamation.

Petitioners have established a prima facie claim for defamation against Defendants. Under New York law, "[d]efamation in word or print is cognizable in an action for libel." Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (quoting Rosenberg v. Metlife, Inc., 453 F.3d 122, 123 n.1 (2d Cir.), certified question accepted, 7 N.Y.3d 804, 854 N.E.2d 1268 (2006), and certified question answered, 8 N.Y.3d 359, 866 N.E.2d 439 (2007)). To state a claim for defamation, a plaintiff must allege "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" Thai, 726 F. Supp. 2d at 329 (citing Gargiulo v. Forster & Garbus, Esqs., 651 F.Supp.2d 188, 192 (S.D.N.Y. 2009) (citing Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)). "Special damages contemplate the loss of something having economic or pecuniary value." Laguerre v. Maurice, 192 A.D.3d 44, 50, 138 N.Y.S.3d 123, 129 (2020). "A statement is defamatory per se if it… tends to injure the plaintiff in her or his trade, business, or profession…" Id.

"Whether a statement is an opinion or fact depends on (1) whether the specific language at issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) whether the statement is capable of being objectively characterized as true or false; (3) examination of the full context of the communication; and (4) consideration of the broader social context or setting surrounding the communication." Grayson v. Ressler & Ressler, 271 F. Supp. 3d 501, 516 (S.D.N.Y. 2017) (citing Kirch v. Liberty Media Corp., 449 F.3d 388, 403 n.7 (2d Cir. 2006)). "When

14

the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, [however,] the borderline between fact and opinion has been crossed." <u>Grayson</u>, 271 F. Supp. 3d at 516 (quoting <u>Restis v. Am. Coal. Against Nuclear Iran, Inc.</u>, 53 F.Supp.3d 705, 721–22 (S.D.N.Y. 2014)).

Petitioners have established a prima facie claim for defamation per se. The websites and the social media accounts promoting them, including the Facebook and Pinterest accounts at issue here, are indisputably engaged in a coordinated campaign of defamation. The websites stephaniejoneslies.com and stephaniejonesleaks.com, which share the same logo as the Facebook and Pinterest accounts at issue, contain numerous false and defamatory allegations regarding Stephanie Jones and Jonesworks. (Mann Decl. Ex. 12, 13, and 14.) For example:

- "holding clients hostage";
- "After receiving a notification following another unsuccessful hacking attempt, we decided to have a bit of fun and look into the penalties for computer hacking as in Connecticut — where Stephanie Jones lives" (obviously implying that Jones hacked the website);
- stating that Jones "cries and screams at [her clients] while collecting substantial monthly fees for below par, fake PR";
- "Stephanie doesn't understand how to truly do PR outside of leaking her own clients' secrets";
- "Stephanie does not fight for her clients but, she does fight with them. Crying, screaming, keeping them hostage";
- "Stephanie Jones takes clients hostage";
- "With Stephanie, once she learns the bad, it becomes her toll and her weapon. The more baggage a client comes to her with, the better positioned Stephanie is to ensure they don't leave her unscathed"
- "Stephanie is known to leak information about her clients to press, so that she

can 'save the day' for them and inspire their gratitude"

- "And she's been so successful in carrying this out over the years, she's influenced not just her own business as clients are either scared to leave or can't due to a sudden turn in public perception, but stock prices and company reputations. Not only does she break confidentiality, she willingly does regardless of the possible damage this kind of behavior might cause. And it does have a cost. Everything in some cases, from reputation, to brand and movie deals, partnerships, philanthropic opportunities, sponsorships – the list goes on and on before it even gets to positive press";

- "These continued 'leaks' affect clients' ability to do business as their news is never safe"; and

- "Stephanie holds her employees in the same contempt – if she finds out where an employee is going when they quit, she's been known to call their new company and tell them they've made a mistake in hiring them"

(Mann Decl. Ex. 12.)[1] These are all false statements. (Jones Decl. ¶¶ 3-9.) Moreover, they are objectively false statements in the form of "accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification." Grayson, 271 F. Supp. 3d at 516. The websites and the Facebook account boosting them defamed Petitioners and falsely impugned on their professional services. Petitioners have established a prima facie case for defamation per se under New York law.

### 3.  Balancing of the Interests Between Discloser and Maintaining Anonymity Requires Enforcement of the Subpoena

To the extent the Court believes there are First Amendment interests involved, the Court must balance Petitioners' interest in the disclosure requested against any constitutional burden that disclosure would impose. See DMCA § 512(H) Subpoena to

---

[1] The stephaniejonesleaks.com website was taken down and no Internet Archive remains available. However, the content on stephaniejonesleaks.com and stephaniejoneslies.com was identical. (Jones Decl. ¶¶ 3-4, 9.) The websites and social media accounts shared a common branding. ((Jones Decl. ¶ 9; Mann Decl. Exs. 12-14.)

_Twitter_, 608 F. Supp. 3d at 876. If "disclosing the defendant's identity 'would cause relatively little harm to the defendant's First Amendment and privacy rights,' but is 'necessary to enable the plaintiff to protect against or remedy the serious wrongs,' then the court should allow the disclosure." _Obi Pharma, Inc., v. Does 1-20_, No. 16CV2218 H (BGS), 2017 WL 1520085, at *4 (S.D. Cal. Apr. 27, 2017) (quoting _Music Grp. Macao Com. Offshore Ltd. v. Does_, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015)).

Here, disclosing the identity of the users who created the defamatory social media accounts (and by extension websites) would cause little harm, if any, to the user's First Amendment or privacy rights. The First Amendment "right to anonymity is not absolute." _Smythe v. Does_, No. 15-MC-80292-LB, 2016 WL 54125, at *2 (N.D. Cal. Jan. 5, 2016) (citing _Art of Living Found. v. Does 1-10_, No. 10-CV-05022-LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011)); _see also_ _In re Anonymous Online Speakers_, 661 F.3d 1168, 1173 (9th Cir. 2011) ("The right to speak, whether anonymously or otherwise, is not unlimited…") "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." _Id._

Revealing the identity of users who created defamatory online accounts as part of an overall campaign to smear Petitioners causes no harm to those user's First Amendment Rights. "An assertion of anonymity for fear of being connected to potentially illegal action is unpersuasive." _Smythe v. Does 1-10_, No. CV 15-4801-R, 2015 WL 12819174, at *1 (C.D. Cal. Nov. 17, 2015) (citing _Call of the Wild Movie, LLC v. Smith_, 274 F.R.D. 334, 337–38 (D.C. 2011)). On the contrary, Petitioners have no alternative method of determining the true identity of the creators of the defamatory accounts or the corresponding websites. The balance weighs heavily in favor of Petitioners.

## VI.    CONCLUSION

Petitioners issued Subpoenas to Respondents Meta and Pinterest for legitimate, non-harassing reasons, to determine the identity of the users who created a defamatory social media accounts and websites. Respondents' First Amendment objections are of no

17

moment. There is no First Amendment right implicated in identifying user data. Even assuming arguendo that a First Amendment analysis is required, the balance of interests weighs heavily in favor of Petitioners. The motion to compel compliance with the Subpoenas should be granted.

Dated: June 25, 2025                    Respectfully submitted,

                                        **UMHOFER, MITCHELL & KING LLP**

                        By:    /s/ *Matthew Donald Umhofer*
                                        Matthew Donald Umhofer
                                        Jonas P. Mann

                                        *Attorneys for Petitioners Stephanie Jones
                                        and Jonesworks LLC*

*PETITIONERS' MOTION TO COMPEL RESPONDENT META PLATFORMS, INC. AND
PINTEREST, INC. TO COMPLY WITH THIRD-PARTY SUBPOENA*