1  PERKINS COIE LLP
   Julie E. Schwartz, Bar No. 260624
2  JSchwartz@perkinscoie.com
   1301 Second Avenue, Suite 4200
3  Seattle, Washington 98101-3804
   Telephone: +1.206.359.8000
4  Facsimile: +1.206.359.9000

5  Alfredo Alan Garza, Bar No. 348511
   AGarza@perkinscoie.com
6  405 Colorado Street, Suite 1700
   Austin, Texas 78701
7  Telephone: +1.737.256.6100
   Facsimile: +1.737.256.6300

8
   *Attorneys for Meta Platforms, Inc.*
9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                 **SAN FRANCISCO DIVISION**

12

13  *IN RE: SUBPOENAS TO META*           Case No. 3:25-mc-80165-TSH
    *PLATFORMS, INC. AND PINTEREST,*
14  *INC.*                               **META PLATFORMS, INC.'S**
                                         **OPPOSITION TO MOTION TO**
15  Served in case: *Jones, et al. v. Abel, et al.,*  **COMPEL**
    S.D.N.Y. 1:25-cv-00779-UA,
16                                       Date:    TBD
                                         Time:    TBD
17                                       Judge:   Hon. Thomas S. Hixson

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION ................................................................. | 1 |
| II. | BACKGROUND ................................................................. | 1 |
| III. | ARGUMENT ................................................................. | 2 |
| | A. The First Amendment protects anonymous speech on the internet. ....................... | 2 |
| | B. Petitioners are limited purpose public figures who have failed to make a prima facie showing that the allegedly defamatory statements were made with actual malice. ................................. | 6 |
| IV. | CONCLUSION ................................................................. | 9 |

META'S OPPOSITION TO MOTION TO COMPEL

**Page(s)**

**CASES**

*Art of Living Found. v. Does 1-10,*
    No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ..................... 3

*Biro v. Conde Nast,*
    807 F.3d 541 (2d Cir. 2015) ......................................................................... 6

*Biro v. Conde Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) .............................................. 6, 7, 8

*Blossoms & Blooms, Inc. v. Doe,*
    No. 22-1557-KSM, 2022 WL 3030788 (E.D. Pa. July 29, 2022) ............................ 8

*Castro v. Doe,*
    No. 23-MC-80198-TSH, 2023 WL 9232964 (N.D. Cal. Oct. 12, 2023) ........ 2, 3, 5, 8

*Chevron Corp. v. Donziger,*
    No. 12-MC-80237 CRB, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .................. 4

*Highfields Capital Mgmt., L.P. v. Doe,*
    385 F. Supp. 2d 969 (N.D. Cal. 2005) .............................................................. 3

*In re Anonymous Online Speakers,*
    661 F.3d 1168 (9th Cir. 2011) ........................................................................ 4

*In re DMCA § 512(h) Subpoena to Twitter, Inc.,*
    608 F. Supp. 3d 868 (N.D. Cal. 2022) .............................................................. 3

*In re Subpoena to: Reddit, Inc.,*
    24-mc-80005, 2024 WL 477519 (N.D. Cal. Feb. 7, 2024) ..................................... 3

*Music Group Macao Commer. Offshore Ltd. v. Does,*
    82 F. Supp. 3d 979 (N.D. Cal. 2015) ............................................................... 3

*Smythe v. Does 1-10,*
    No. CV 15-4801-R, 2015 WL 12819173 (C.D. Cal. Sept. 25, 2015) ....................... 5

*The London v. Does 1-4,*
    279 F. App'x 513 (9th Cir. 2008) ................................................................. 3, 4

*United States v. Meta Platforms, Inc.,*
    No. 23-MC-80249-PHK, 2023 WL 8438579 (N.D. Cal. Dec. 5, 2023) ..................... 4

**STATUTES**

28 U.S.C. § 1782 ........................................................................................... 3, 4

**OTHER AUTHORITIES**

First Amendment .................................................................................... passim

META'S OPPOSITION TO MOTION TO COMPEL

**Page(s)**

https://www.facebook.com/people/Stephanie-Jones/61559205100286/ ........................2

Megan Twohey, Mike McIntire and Julie Tate, '*We Can Bury Anyone':
Inside a Hollywood Smear Machine*, N.Y. TIMES, Dec. 22, 2024,
available at
https://www.nytimes.com/2024/12/21/business/media/blake-lively-
justin-baldoni-it-ends-with-us.html ........................................................................1

Perez Hilton, *Blake Lively Or Justin Baldoni? Whose Side Is The
Internet On?* (Jan. 3, 2025), https://perezhilton.com/internet-
reactions-blake-lively-justin-baldoni-it-ends-with-us-legal-drama/ ........................7

www.stephaniejonesleaks.com ........................................................................................2

www.stephaniejoneslies.com .........................................................................................2

META'S OPPOSITION TO MOTION TO COMPEL

## I. INTRODUCTION

This matter arises from the very public dispute between actors Justin Baldoni and Blake Lively, the stars of the 2024 film *It Ends With Us*. Petitioners Stephanie Jones and Jonesworks LLC (Petitioners) are the former public relations representatives for Mr. Baldoni who are currently suing Mr. Baldoni and others in the Southern District of New York for alleged misconduct stemming from the Baldoni-Lively dispute. As part of that litigation, Petitioners issued a subpoena to nonparty Meta Platforms, Inc. (Meta) for identifying information regarding the administrator of a Facebook page that has allegedly defamed Petitioners. Meta objected to the subpoena on First Amendment grounds, and Petitioners now move to compel Meta's compliance.

The Court should deny Petitioners' motion because they have failed to carry their burden to overcome the Facebook user's First Amendment right to engage in anonymous speech. When a litigant subpoenas a service provider like Meta for an anonymous user's identifying information, the First Amendment requires the requesting party to demonstrate a prima facie case on the merits of their underlying claim. Petitioners claim the discovery sought by the subpoena is necessary for their defamation claim, but Petitioners are limited purpose public figures who must sufficiently allege any defamatory statements were made with actual malice. Petitioners, however, do not address the actual malice standard at all in their motion to compel. Accordingly, Petitioners have failed to carry their burden under the First Amendment and Meta respectfully requests that the Court deny their motion to compel.

## II. BACKGROUND

The Baldoni-Lively dispute has attracted a great deal of public attention. *See, e.g.*, Megan Twohey, Mike McIntire and Julie Tate, *'We Can Bury Anyone': Inside a Hollywood Smear Machine*, N.Y. TIMES, Dec. 22, 2024, available at

1    https://www.nytimes.com/2024/12/21/business/media/blake-lively-justin-baldoni-it-

2    ends-with-us.html. Petitioners' Complaint stems from that dispute and was filed in

3    New York against Mr. Baldoni and others on December 24, 2024. *See* ECF No. 1-2.[1]

4    The Complaint alleges, among other things, that certain defendants used the

5    Baldoni-Lively dispute to attack Petitioners' reputation and steal their business. *Id*.

6    ¶¶ 46-106. As relevant to the pending motion to compel, Petitioners' Complaint

7    alleges that certain John Doe defendants created two websites

8    (www.stephaniejonesleaks.com and www.stephaniejoneslies.com) and unidentified

9    social media accounts that promoted those websites as part of a conspiracy to

10   defame Petitioners. *Id*. ¶¶ 23, 92-93.

11        In an apparent effort to learn who was behind one of the unidentified social

12   media accounts mentioned in their Complaint, Petitioners issued a subpoena to

13   Meta for "[a]ll basic user information regarding the Facebook account at

14   https://www.facebook.com/people/Stephanie-Jones/61559205100286/ including the

15   user's name, physical address, phone number, e-mail address, and account login and

16   usage history (including IP addresses and user location data)." ECF No. 1-3.

17        Meta objected to the subpoena on First Amendment grounds, *see* ECF No. 1-4,

18   and Petitioners now move to compel Meta's compliance with the subpoena.

19              **III.   ARGUMENT**

20   **A.   The First Amendment protects anonymous speech on the internet.**

21        Petitioners assert that "[t]he Ninth Circuit has repeatedly held that the First

22   Amendment does not protect subscriber information from discovery." ECF No. 1 at

23   11. Not so. As this Court has held, "[t]he First Amendment protects the rights of

24   individuals to speak anonymously" and "[t]he Ninth Circuit recognizes that the

25   decision to remain anonymous extends to anonymous speech made on the internet."

26

27   [1] The defendants removed the Complaint from state court to the U.S. District Court
for the Southern District of New York on January 27, 2025. *See* ECF No. 1 in

28   S.D.N.Y Case No. 1:25-cv-00779.

-2-

*Castro v. Doe*, No. 23-MC-80198-TSH, 2023 WL 9232964, at *3 (N.D. Cal. Oct. 12, 2023) (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("[O]nline speech stands on the same footing as other speech – there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.") (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)). Accordingly, an anonymous internet user's subscriber information is presumptively protected by the First Amendment and "[w]hen third-party providers such as [Meta] receive subpoenas to produce identifying information of posters of anonymous speech, courts apply the appropriate First Amendment standard to ensure that a person's right to anonymous speech is protected." *Castro*, 2023 WL 9232964, at *3 (collecting cases).

"Operationally, the inquiry consists of two steps." *Id*. (quoting *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022)). "First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest at stake." *Castro*, 2023 WL 9232964, at *3 (quoting I*n re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876). While this Court has allowed discovery of subscriber information over a First Amendment objection in some circumstances, it has also denied requests for subscriber information on First Amendment grounds on many occasions. S*ee, e.g., In re Subpoena to: Reddit, Inc.*, 24-mc-80005, 2024 WL 477519, at *5 (N.D. Cal. Feb. 7, 2024) (denying motion to compel Reddit to produce subscriber information); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 883 (denying motion to compel Twitter to produce subscriber information); *Music Group Macao Commer. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (denying motion to compel Glassdoor to produce subscriber information); *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *1 (N.D. Cal. Nov. 9, 2011)

META'S OPPOSITION TO MOTION TO COMPEL

1  (denying motion to compel Google and Automattic to produce subscriber

2  information); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 971 (N.D.

3  Cal. 2005) (granting motion to quash subpoena for Yahoo! subscriber information).

4        Petitioners ignore those cases, while citing a series of cases that are factually

5  inapposite and do not support the incorrect suggestion that subscriber information is

6  wholly unprotected by the First Amendment. *The London v. Does 1-4* case that

7  Petitioners rely upon involved an application under 28 U.S.C. § 1782 for discovery

8  regarding certain email accounts for use in a divorce in St. Martin. 279 F. App'x 513,

9  514 (9th Cir. 2008). The Ninth Circuit allowed that discovery because "Appellants

10 cite[d] no authority for the proposition that the First Amendment bars release of

11 identifying data for email accounts used to solicit sex partners on the Internet." *Id.*

12 at 515. Those facts in an overseas divorce case are a far cry from the facts of this

13 case, and in any event, the Ninth Circuit panel in *London v. Does 1-4* did not suggest

14 that the First Amendment leaves anonymous internet users' subscriber information

15 wholly unprotected.

16        The *United States v. Meta Platforms, Inc.* case that Petitioners cite also

17 involved a § 1782 application, this time for discovery regarding certain Instagram

18 accounts for use in a civil case in South Korea. No. 23-MC-80249-PHK, 2023 WL

19 8438579, at *1 (N.D. Cal. Dec. 5, 2023). The court noted that "United States citizens,

20 whether inside or outside of United States territory, possess First Amendment

21 rights," while "[f]oreign citizens who are outside United States territory, by contrast,

22 do not possess any rights under the United States Constitution, including under the

23 First Amendment." *Id.* at *6. Because there was "nothing in the present record

24 indicating the unidentified defendant(s) in the underlying Korean civil action are

25 entitled to First Amendment protections," the court permitted the discovery. *Id.*

26 That case has no bearing on this matter, which involves a U.S. civil proceeding

27 among U.S. residents.

28

1    Petitioners also cite *Chevron Corp. v. Donziger*, which sought discovery

2    regarding certain email accounts, and is a case where this Court discussed the Ninth

3    Circuit's opinion finding that the First Amendment presumptively protects

4    subscriber information. No. 12–MC–80237 CRB, 2013 WL 4536808, at *6 (N.D. Cal.

5    Aug. 22, 2013) (discussing *In re Anonymous Online Speakers*, 661 F.3d at 1177). In

6    *Chevron*, the court ultimately rejected the First Amendment objections because the

7    subpoenas at issue were "not seeking to link the identity of the email subscribers

8    with the receipt of particular statements" nor did the movants "satisfactorily show[]

9    that their actions were anonymous." 2013 WL 4536808 at *7-*8. Those facts are the

10   polar opposite of this case, where Petitioners are trying to link the Facebook user to

11   allegedly defamatory statements and the user is indisputably anonymous.

12   Finally, the *Smythe v. Does 1-10* case that Petitioners cite involved allegations

13   that unknown internet users were engaged in "cyber harassment and cyberstalking"

14   of the plaintiff as well as the use of "hacked passwords to access and control

15   [plaintiff's] website and email accounts." No. CV 15-4801-R, 2015 WL 12819173, at

16   *1 (C.D. Cal. Sept. 25, 2015). While the court acknowledged "the First Amendment

17   provides some rights regarding anonymity," it permitted the plaintiff to obtain the

18   requested subscriber information because "[a]n assertion of anonymity for fear of

19   being connected to potentially illegal action is unpersuasive." *Id*. at *2. Nothing in

20   *Smythe* supports Petitioners' claim that subscriber information is per se unprotected

21   by the First Amendment, nor do that case's allegations of serious criminal acts by

22   the anonymous users provide this Court with any relevant factual precedent for how

23   to resolve a subpoena like the one issued to Meta involving allegations of civil

24   defamation.

25   In sum, the subscriber information at issue here is presumptively protected by

26   the First Amendment and the Court must assess whether Petitioners have

27   demonstrated a prima facie case on the merits of their defamation claim before

28

1 compelling Meta to comply with the subpoena. *See Castro*, 2023 WL 9232964, at \*3.

2 For the reasons below, Meta respectfully submits that Petitioners have failed to

3 carry their burden.

4 **B.    Petitioners are limited purpose public figures who have failed to**
**make a prima facie showing that the allegedly defamatory statements**
5 **were made with actual malice.**

6      Petitioners claim to have made a prima facie showing of their defamation

7 claims, but nowhere in Petitioners' motion do they address the actual malice

8 standard that applies to defamation claims brought by limited purpose public

9 figures. Meta submits that is fatal to their motion because Petitioners are limited

10 purpose public figures with respect to the Baldoni-Lively dispute.

11      In the Second Circuit, where Petitioners' underlying case is pending,[2]

12 "[l]imited-purpose public figures who seek damages for defamatory statements must

13 show that the statements were made with 'actual malice'—that is, with knowledge

14 that the statements were false or with reckless disregard as to their falsity." *Biro v.*

15 *Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). "Whether or not a person or an

16 organization is a public figure is a question of law for the court to decide." *Biro v.*

17 *Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013). "[O]nce a plaintiff is deemed

18 a limited purpose public figure, courts allow the heightened protections to sweep

19 broadly, covering all statements by defendants that are not wholly unrelated to the

20 controversy." *Id*. at 271 (cleaned up).

21      The Second Circuit's test for determining whether Petitioners are limited

22 purpose public figures requires an assessment of whether Petitioners have:

23         (1) successfully invited public attention to [their] views in
an effort to influence others prior to the incident that is
24         the subject of litigation; (2) voluntarily injected
[themselves] into a public controversy related to the
25         subject of the litigation; (3) assumed a position of

26

27 [2] The governing law in the court where the underlying case is pending controls the
prima facie claim analysis. *See, e.g.*, Castro, 2023 WL 9232964, at \*3 (analyzing
28 Texas law to determine "whether plaintiff has a viable defamation claim.").

prominence in the public controversy; and (4) maintained
regular and continuing access to the media.

*Biro*, 963 F. Supp. 2d at 270 (quoting *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136–37 (2d Cir. 1984)). Petitioners satisfy all four elements of this test with respect to the Baldoni-Lively dispute, as detailed below.

Regarding the first element, Petitioners have successfully invited public attention to their views in an effort to influence others by dint of their asserted status as "internationally recognized public-relations and strategic-communications" experts with "a roster of prominent corporate, entertainment, and sports clients[.]" ECF No. 1-16 at ¶¶ 1-2 (Declaration of Stephanie Jones). The Counterclaim-Plaintiffs in the underlying suit further allege that one of the Petitioners is half of a "bona fide Hollywood power couple" by virtue of her marriage to a prominent talent agent. ECF No. 1-9 at ¶ 12 (Counterclaims of Jennifer Abel); *see also* ECF No. 1-12 at ¶ 12 (Counterclaims of Wayfarer Studios LLC). Together, these admissions and allegations establish that Petitioners have invited public attention to their views on public-relations and strategic-communications in the entertainment industry prior to the Baldoni-Lively dispute. *See Biro*, 963 F. Supp. 2d at 271 (plaintiff's proclamations that he was a "leading authority" in his field were sufficient to establish he had invited public attention to his views).

As for the second and third elements, Petitioners have voluntarily injected themselves into the Baldoni-Lively dispute and assumed a position of prominence in it. This is evidenced by an email purportedly sent by Petitioners claiming,

> I have been deeply involved in strategy, planning, account management and high level PR and media comms as well as crisis until you asked me to stop communicating on behalf of Justin and Wayfarer on 8/9/24 and allow only Jennifer, Matthew and team to handle. I've been on set during shoots and have had numerous calls weekly with my team and yours as well as many with Justin, particularly regarding Blake, often at 11 pm, 1am ET

META'S OPPOSITION TO MOTION TO COMPEL

(New York). My commitment spans not only the past eight years but also the last four since you joined.

*See* ECF No. 1-12 at ¶ 48 (Counterclaims of Wayfarer Studios LLC); ECF No. 1-9 at ¶ 79 (Counterclaims of Jennifer Abel).[3]  The Counterclaim-Plaintiffs further allege that Petitioners injected themselves into the Baldoni-Lively dispute and assumed a position of prominence in it by:

- making a "desperate attempt to re-insert [themselves in the Baldoni-Lively dispute] and contact[ing] a Daily Mail reporter about a story they had published about Baldoni and Lively," ECF No. 1-9 at ¶ 81 (Counterclaims of Jennifer Abel); *see also* ECF No. 1-12 at ¶ 40 (Counterclaims of Wayfarer Studios LLC);

- "advocating for a more aggressive public relations strategy" by "promot[ing] positive narratives that media outlets cannot ignore" and "mobiliz[ing] a robust network of supporters and third-party advocates," ECF No. 1-12 at ¶¶ 45-46 (Counterclaims of Wayfarer Studios LLC); and

- providing one of the Counterclaim-Plaintiff's private communications to Ms. Lively and others. *See* ECF No. 1-9 at ¶¶ 90-91 (Counterclaims of Jennifer Abel).

Finally, as public-relations and strategic-communications experts in the entertainment industry, Petitioners necessarily maintain regular and continuing access to the media in satisfaction of the fourth element. *See Biro*, 963 F. Supp. 2d at 275 (finding that plaintiff "enjoys significantly greater access to the channels of effective communication than the average private person, and hence has a more realistic opportunity to counteract false statements th[a]n private individuals normally enjoy.") (cleaned up). Indeed, this appears to be true even as to this specific

---

[3] The Baldoni-Lively dispute has generated strongly held views among the public and thus qualifies as a public controversy for purposes of this analysis. *See Biro*, 963 F. Supp. 2d at 272 ("A public controversy is simply any topic upon which sizeable segments of society have different, strongly held views, even if the topic does not involve political debate or criticism of public officials.") (cleaned up); *see also* Perez Hilton, *Blake Lively Or Justin Baldoni? Whose Side Is The Internet On?*, PEREZHILTON.COM (Jan. 3, 2025), https://perezhilton.com/internet-reactions-blake-lively-justin-baldoni-it-ends-with-us-legal-drama/ ("From the looks of it, folks have very strong opinions — on both sides.").

dispute. *See* ECF No. 1-12 at ¶ 48 (Counterclaims of Wayfarer Studios LLC) (quoting Petitioners as claiming to "have been deeply involved in . . . high level PR and media comms"). Petitioners therefore qualify as limited purpose public figures with respect to the Baldoni-Lively dispute.

As limited purpose public figures, Petitioners bear the "onerous task" of alleging that the anonymous Facebook user made their statements with actual malice supported by "factual allegations" sufficient to establish the user's state of mind. *Biro*, 963 F. Supp. 2d at 278. Conclusory allegations that amount to "a mere recitation of the legal standard" do not suffice. *Id.* at 280 (citation omitted). But Petitioners' motion to compel does not address the actual malice standard at all or Petitioners' status as limited purpose public figures, let alone factual allegations to meet such standard. Accordingly, Petitioners have failed to make a prima facie showing of their defamation claims and their motion to compel should be denied. *Compare Blossoms & Blooms, Inc. v. Doe*, No. 22-1557-KSM, 2022 WL 3030788 at *5 (E.D. Pa. July 29, 2022) (denying a motion for leave to issue a subpoena for a Facebook user's subscriber information where plaintiffs failed to establish actual malice because they "offered no evidence that the statements were made with a 'reckless disregard' for the truth."), with *Castro*, 2023 WL 9232964, at *5 (granting a motion to compel compliance with a subpoena for subscriber information because "falsely accusing someone who is running for President of being under federal criminal indictment and lying about his military service, while using unreliable sources and entertaining serious doubts about the truthfulness of the statements, is enough to satisfy the actual malice standard.").

## IV. CONCLUSION

For the reasons stated, the Court should deny Petitioners' Motion to Compel.

Dated: July 9, 2025

**PERKINS COIE LLP**

By: */s/ Julie E. Schwartz*
Julie E. Schwartz, Bar No. 260624

*Attorneys for Meta Platforms, Inc.*