1

**UMHOFER, MITCHELL & KING LLP**
Matthew Donald Umhofer (SBN 206607)

2
Jonas P. Mann (SBN 263314)
767 S. Alameda St., Suite 270

3
Los Angeles, California 90021
Telephone: 213-394-7979

4
Facsimile:  213-529-1027
matthew@umklaw.com

5
jonas@umklaw.com

6
*Attorneys for Petitioners Stephanie Jones*
*and Jonesworks LLC*

7

8
### UNITED STATES DISTRICT COURT

9
### NORTHERN DISTRICT OF CALIFORNIA

10

11
*IN RE: SUBPOENAS TO META*
*PLATFORMS, INC. AND PINTEREST,*
*INC.*

12

13
Served in case: *Jones, et al. v. Abel, et*
*al.*, S.D.N.Y. 1:25-cv-00779-UA

Misc. Case Number: 3:25-mc-80165-TSH

*Hon. Thomas S. Hixson*

**PETITIONERS STEPHANIE JONES**
**AND JONESWORKS LLC'S REPLY IN**
**SUPPORT OF THEIR MOTION TO**
**COMPEL RESPONDENTS META**
**PLATFORMS, INC. AND PINTEREST,**
**INC. TO COMPLY WITH THIRD-**
**PARTY SUBPOENA**

14

15

16

Date:   TBD
Time:   10:00 a.m.
Ctrm:   E

17

18

19

20

21

22

23

24

25

26

27

28

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

I.       INTRODUCTION .........................................................................................1

II.      ARGUMENT...................................................................................................2

         A.     User Information Does Not Implicate First Amendment Concerns ..........2

         B.     Stephanie Jones Is *Not* a Limited-Purpose Public Figure Based on
                Involvement in a Celebrity Dispute ............................................................2

         C.     Requiring Proof of "Actual Malice" at the Subpoena Stage is Legally
                Improper and Logically Impossible ...........................................................5

         D.     In the Alternative, the Coordinated Smear Campaign Supports a Strong
                Inference of Actual Malice..........................................................................9

III.     CONCLUSION ...............................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

<u>Babb v. Minder</u>,
  806 F.2d 749 (7th Cir. 1986)................................................................12

<u>Beauharnais v. Illinois</u>,
  343 U.S. 250 (1952) .........................................................................7

<u>Bentley v. Bunton</u>,
  94 S.W.3d 561 (Tex. 2002) ...............................................................8

<u>Biro v. Conde Nast</u>,
  807 F.3d 541 (2d Cir. 2015) ..............................................................10

<u>Biro v. Conde Nast</u>,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013)....................................................10

<u>Blossoms & Blooms, Inc. v. Doe</u>,
  2022 WL 3030788 (E.D. Pa. July 29, 2022)..............................................8

<u>Brown v. Kelly Broad. Co.</u>,
  48 Cal. 3d 711 (1989)......................................................................5

<u>Castro v. Doe</u>,
  No. 23-MC-80198-TSH, 2023 WL 9232964 (N.D. Cal. Oct. 12, 2023).............6, 8, 9

<u>Celle v. Filipino Rep. Enters. Inc.</u>,
  209 F.3d 163 (2d Cir. 2000) ..............................................................12

<u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n</u>,
  447 U.S. 557 (1980) .........................................................................7

<u>Chaplinsky v. State of New Hampshire</u>,
  315 U.S. 568 (1942) .........................................................................7

<u>Church of Scientology Int'l v. Behar</u>,
  238 F.3d 168 (2d Cir. 2001) .........................................................6, 10, 11

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

Dalbec v. Gentleman's Companion, Inc.,
   828 F.2d 921 (2d Cir. 1987) ....................................................................................10

Digital Music News LLC v. Superior Court,
   226 Cal. App .4th 216, (2014) .................................................................................7

Doe v. Cahill,
   884 A.2d 451 (Del. 2005) .....................................................................................6, 7

Gertz v. Robert Welch, Inc.,
   418 U.S. 323 (1974) ................................................................................................4

Goldfarb v. Channel One Russia,
   663 F. Supp. 3d 280 (S.D.N.Y. 2023) ....................................................................11

Gottwald v. Sebert,
   148 N.Y.S. 3d 37, 193 A.D.3d 573 (2021) ..............................................................3

Harper & Row v. Nation Enterprises,
   471 U.S. 539 (1985) ................................................................................................7

Harte-Hanks Commc'ns, Inc. v. Connaughton,
   491 U.S. 657 (1989) ..........................................................................................10, 11

In re Anonymous Online Speakers,
   661 F.3d 1168 (9th Cir. 2011) .................................................................................9

In re Ottinger v. Non-Party The Journal News,
   No. 08-03892, 2008 N.Y. Misc. LEXIS 4579 (Sup. Ct. Westchester County,
   June 27, 2008) .........................................................................................................6

Karedes v. Ackerley Grp., Inc.,
   423 F.3d 107 (2d Cir. 2005) ....................................................................................6

Khalil v. Fox Corp.,
   630 F. Supp. 3d 568 (S.D.N.Y. 2022) .....................................................................6

Khawar v. Globe Int'l, Inc.,
   19 Cal. 4th 254 (1998) ............................................................................................4

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

Krinsky v. Doe 6,
  159 Cal. App. 4th 1154 (2008)......................................................................7

La Liberte v. Reid,
  966 F.3d 79 (2d Cir. 2020)...........................................................................4

Lerman v. Flynt Distrib. Co., Inc.,
  745 F.2d 123 (2d Cir. 1984).........................................................................4

London v. Does 1-4,
  279 F. App'x 513 (9th Cir. 2008)..................................................................2

McDougal v. Fox News Network, LLC,
  489 F. Supp. 3d 174 (S.D.N.Y. 2020).........................................................10

Milkovich v. Lorain J. Co.,
  497 U.S. 1 (1990) ......................................................................................7, 9

N.Y. Times Co. v. Sullivan,
  376 U.S. 254 (1964) .....................................................................................8

Palin v. New York Times Co.,
  113 F.4th 245 (2d Cir. 2024)......................................................................10

People of State of Cal. v. F.C.C.,
  75 F.3d 1350 (9th Cir.1996).........................................................................2

Prince v. Intercept,
  634 F. Supp. 3d 114 (S.D.N.Y. 2022)...............................................3, 4, 9, 11

Roth v. United States,
  354 U.S. 476 (1957) .....................................................................................7

SI03, Inc. v. Bodybuilding.com, LLC,
  441 F. App'x 431 (9th Cir. 2011)..................................................................7

St. Amant v. Thompson,
  390 U.S. 727, (1968) .............................................................................10, 11

Time, Inc. v. Firestone,
  424 U.S. 448 (1976) .....................................................................................4

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

USA Techs., Inc. v. Doe,

   713 F. Supp. 2d 901 (N.D. Cal. 2010) ............................................................9

Wolston v. Reader's Digest Assn. Inc.,

   443 U.S. 157 (1979) ......................................................................................3

Wooley v. Maynard,

   430 U.S. 705 (1977) ......................................................................................2

ZL Techs., Inc. v. Does 1-7,

   13 Cal. App. 5th 603, (2017)........................................................................7

Zuru, Inc. v. Glassdoor, Inc.,

   614 F. Supp. 3d 697 (N.D. Cal. 2022) ........................................................9

**Rules**

Fed. R. Evid. 901 ................................................................................................1

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

1    **I.    INTRODUCTION**

2        Respondents' opposition rests on two false premises: that social media account user

3    data is protected by the First Amendment and that Petitioners must clear an "actual malice"

4    evidentiary hurdle now, without any discovery, before obtaining the very discovery

5    necessary to identify their anonymous defamers. Respondents are wrong on both counts.

6        The Ninth Circuit has repeatedly held that discovery of user data does not implicate

7    First Amendment concerns. Even if this were not the case, Petitioners have established a

8    *prima facie* case for defamation and their need for the requested discovery far outweighs

9    any First Amendment concerns. Respondents' argument that Petitioners must go above

10   and beyond and establish the mental state of the anonymous speakers who defamed them

11   in order to learn their identity is neither legally sound nor feasible at the subpoena stage.

12       First, Stephanie Jones is a private figure. Jones is not transformed into a limited-

13   purpose public figure merely because she works in "public relations" or is associated with

14   a high-profile dispute between celebrities.[1] Further, Respondents' timeline is flat out

15   wrong. The social media accounts at issue first appeared in May 2024, months before any

16   dispute between Justin Baldoni and Blake Lively became public and Jones learned of the

17   machinations of her former employee. Even if the Court were to accept Respondents'

18   unsupported arguments, they cannot demonstrate that Jones could have "voluntarily

19   inserted" herself into a "public" dispute that had not yet become public.

20       Second, even if actual malice is ultimately required at trial, courts recognize it is

21   improper to demand proof of a speaker's state of mind before the speaker is identified, as

22   such would be an impossible standard that would gut the subpoena power in defamation

23   cases.

24       Finally, even if the Court considers actual malice now, the coordinated smear

25   campaign against Jones—spanning multiple websites and social media accounts—

26

27   ───────────────
     [1] Respondents only "support" for their arguments are citations to unverified pleadings
28   and references to websites without authentication. Pursuant to F.R.E. 901, Petitioners
     object to all such references to pleadings and websites in their oppositions.

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

provides powerful circumstantial evidence of actual malice under New York defamation law. Petitioners have amply demonstrated a *prima facie* case justifying enforcement of the subpoenas.

## II.    ARGUMENT

### A.    User Information Does Not Implicate First Amendment Concerns

The First Amendment prevents prior restraints by the government on speech. It does provide immunity from the consequences of one's actions, including liability for defamation. While Respondents point to minor differences in the factual underpinnings of Petitioners' cases, they do change the fact that courts have clearly held that "exposure of some identifying data does not violate the First Amendment." London v. Does 1-4, 279 F. App'x 513, 515 (9th Cir. 2008) (citing People of State of Cal. v. F.C.C., 75 F.3d 1350, 1362 (9th Cir.1996)); see also People of State of Cal. v. F.C.C., 75 F.3d 1350, 1362 (9th Cir. 1996) (quoting Wooley v. Maynard, 430 U.S. 705, 714–715 (1977) (White, J., dissenting); emphasis added) ("The First Amendment protects persons from being compelled to express 'adherence to an ideological point of view he finds unacceptable.' The government cannot require an individual to participate in the dissemination on an 'ideological message.' *Exposure of a telephone number does not violate the First Amendment right not to speak*.").

### B.    Stephanie Jones Is *Not* a Limited-Purpose Public Figure Based on Involvement in a Celebrity Dispute

Even if the Court were to decide that a First Amendment analysis is required, Petitioners established a *prima facie* case for defamation. Indeed, Respondents do not dispute that Petitioners established a *prima facie* case for defamation as applied to private figures, instead they argue that Jones should be subjected to a higher standard applied to public figures. Respondents provide no evidence for this proposition beyond referring to Jones' career in public relations.

As an initial matter, Respondents' oppositions completely ignore the timeline of the events involved. Both Respondents argue that "Petitioners satisfy all four elements of [the

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

limited purpose public figures] test **with respect to the Baldoni-Lively dispute**...” (Meta Opp. at p.7; Pinterest Opp. at p.7; emphasis added.) However, the appearance of the websites and social media accounts at issue predates the Baldoni-Lively dispute by months. As stated in Jones' declaration, she learned of the existence of the social media accounts in May 2024. (Jones Decl. ¶¶ 3-4.) While the date of creation of the Facebook and Pinterest accounts is unknown because of Respondents' refusal to comply with legitimate discovery requests, the earliest posts on the Facebook account show that the account “updated their cover photo,” “updated their profile photo,” and “updated their bio” on May 8, 2024. (Declaration of Jonas P. Mann in Support of Petitioners' Reply in Support of Motion to Compel, Exhibits 1-3.) Thus, at the *latest*, these accounts were created in May 2024.

As alleged in the operative complaint, Abel and Nathan's scheming began in July 2024 (Compl. ¶7-9) and Jones did not learn about it until August 2024 (Compl. ¶13). Blake Lively did not file her complaint until December 31, 2024. (Mann Decl. Ex. 4.) Thus, it is impossible for Petitioners to have “invited public attention,” “voluntarily injected themselves,” or “assumed a position of prominence” in a public controversy that had yet to exist at the time of the creation of the accounts at issue. That Jones has a successful public relations career does not render all libel and slander against her outside the reach of defamation law in perpetuity.

Even if the social media accounts did not pre-date the Lively-Baldoni dispute by several months, Respondents' attempt to classify Jones as a limited-purpose public figure would still fail under well-established law. “A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.” Gottwald v. Sebert, 148 N.Y.S. 3d 37, 44, 193 A.D.3d 573 (2021), aff'd as modified, 40 N.Y.3d 240, 220 N.E.3d 621 (2023) (quoting Wolston v. Reader's Digest Assn. Inc., 443 U.S. 157, 167 (1979)). Indeed, “[a] ‘trivial or tangential' role in the controversy is not sufficient to be a limited-purpose public figure.” Prince v. Intercept, 634 F. Supp. 3d 114, 137-38 (S.D.N.Y. 2022).

1    Instead, the plaintiff must have assumed a position of "especial prominence in the

2    affairs of society" or "thrust herself to the forefront of any particular public controversy

3    in order to influence the resolution of the issues involved in it." See Time, Inc. v. Firestone,

4    424 U.S. 448, 453 (1976). Jones did no such thing. She did not seek public attention or

5    media coverage *of herself or her company* in the Baldoni-Lively dispute; at most, her

6    involvement was *incidental and behind-the-scenes*. She never "'thrust [herself] to the

7    forefront' of the controversy" nor "invite[d] attention and comment" upon herself nor

8    "assumed special prominence in [its] resolution." La Liberte v. Reid, 966 F.3d 79, 91 (2d

9    Cir. 2020) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 351 (1974)); see also

10   Khawar v. Globe Int'l, Inc., 19 Cal. 4th 254, 263 (1998). To the contrary, any public

11   notoriety arose from others' actions, including those of a rogue employee, and press

12   interest in Lively and Baldoni but not from Petitioners' own conduct.

13   The Supreme Court's decision in Time, Inc. v. Firestone is directly on point. In

14   Firestone, a wealthy socialite's divorce garnered media attention, but the Court held she

15   was *not* a public figure because she "did not thrust herself to the forefront of any particular

16   public controversy in order to influence the resolution of the issues involved." Firestone,

17   supra. The mere fact that the proceedings were newsworthy did not transform her into a

18   public figure: "Dissolution of a marriage through judicial proceedings is not the sort of

19   'public controversy' referred to in Gertz, even though the marital difficulties of extremely

20   wealthy individuals may be of interest to some portion of the reading public." Id. Likewise

21   here, the Baldoni-Lively dispute and litigation may have attracted gossip-column

22   attention, but Jones "assumed no 'special prominence' in the resolution of [any] public

23   questions." Gertz, 418 U.S. at 351. She was "pulled into [the] spotlight" by events outside

24   her control, stepping forward, at most, "solely to defend her reputation." La Liberte v.

25   Reid, 966 F.3d 92. Such a "trivial or tangential" participation in others' feud does not

26   divest a person of their private-figure status. Prince, 634 F. Supp. 3d at 137–38.

27   The four-factor test set forth in Lerman v. Flynt Distrib. Co., Inc. underscores why

28   Jones remains a private figure. Those factors ask whether the individual (1) invited public

4

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

attention to influence others, (2) voluntarily injected herself into the controversy, (3) assumed a position of prominence in the public issue, and (4) maintained regular media access. <u>Lerman,</u> 745 F.2d 123, 136–37 (2d Cir. 1984). Jones fails this test. Jones never sought to influence public opinion about the Baldoni-Lively matter because any media outreach she undertook was done on her client's behalf, not to publicize her *own* views. She was not a public crusader or outspoken *persona* in the controversy, but a paid professional working behind the scenes.

Respondents' arguments and unsupported references to emails "purportedly sent" by Jones do nothing to alter her status as a private person for the purposes of this defamation claim. Obviously, Jones works in public relations and Baldoni was a Jonesworks client. But that work, by its very nature, is about the public stature of **her clients, not herself**. Further, the unverified, self-serving allegations in Abel's cross-complaint are not evidence of anything.

In short, treating Jones as a limited-purpose public figure would contravene the core principles of applicable defamation law. The undisputed facts show Jones did not invite any such notoriety for herself. At most, she became *involuntarily* entangled in others' public drama, akin to the plaintiffs in <u>Firestone</u> or <u>La Liberte</u>, because of the unauthorized actions of a rogue employee. The Court should reject Respondents' attempt to expand public-figure doctrine to someone who was "pulled into a spotlight" by others' actions. <u>La Liberte</u>, 966 at 92. Jones remains a private figure, meaning her defamation claim need only satisfy a negligence standard, not actual malice. <u>Id</u>.; <u>Brown v. Kelly Broad. Co.</u>, 48 Cal. 3d 711, 742 (1989) ("[A] private person need prove only negligence (rather than malice) to recover for defamation.").

## C.    Requiring Proof of "Actual Malice" at the Subpoena Stage is Legally Improper and Logically Impossible

Even assuming *arguendo* that an actual malice standard will apply *at trial*, Petitioners cannot reasonably be expected to prove a defendant's state of mind before obtaining the defendant's identity. Courts have widely recognized this "Catch-22" and

have declined to impose such an unfair burden at the subpoena stage. In <u>In re Ottinger v.</u> <u>Non-Party The Journal News</u>, the Supreme Court of New York, Westchester County, explicitly held that evidence of actual malice is not necessary for a public figure libel plaintiff to unmask an anonymous poster's identity. No. 08-03892, 2008 N.Y. Misc. LEXIS 4579, at *7 (Sup. Ct. Westchester County June 27, 2008) ("The court...finds that the petitioners, at this point in the proceeding, need not prove [actual malice] to obtain pre-action disclosure."). Noting the lack of precedent on the issue, the <u>Ottinger</u> court looked to cases from neighboring jurisdictions, such as <u>Doe v. Cahill</u>. <u>Id</u>. at *4-5. In <u>Cahill</u>, the Supreme Court of Delaware explicitly acknowledged that it was "mindful that public figures in a defamation case must prove that the defendant made the statements with actual malice" but that "[w]ithout discovery of the defendant's identity, satisfying this element may be difficult, if not impossible." <u>Doe v. Cahill,</u> 884 A.2d 451, 464 (Del. 2005). Accordingly, in reckoning with the actual malice standards under New York law, New York courts have recognized that "[t]his analysis typically requires discovery." <u>Khalil v.</u> <u>Fox Corp.</u>, 630 F. Supp. 3d 568, 584 (S.D.N.Y. 2022) (citing <u>Karedes v. Ackerley Grp.,</u> <u>Inc.,</u> 423 F.3d 107, 114-15 (2d Cir. 2005); <u>Church of Scientology Int'l v. Behar</u>, 238 F.3d 168, 174 (2d Cir. 2001)).

Notably, California courts have reached the same conclusion, recognizing that requiring a public figure defamation plaintiff to establish actual malice before identifying the speaker imposes an impossible standard that effectively forecloses relief. <u>Castro v.</u> <u>Doe</u>, No. 23-MC-80198-TSH, 2023 WL 9232964, at *6 (N.D. Cal. Oct. 12, 2023) ("Castro's defamation claim almost surely won't make it off the ground without Wikimedia's help. Wikimedia knows Chetsford's identity; Castro doesn't. And if Wikimedia doesn't identify Chetsford, Castro would be left without a means by which to 'vindicate his good name.'") (quoting <u>Milkovich v. Lorain J. Co.</u>, 497 U.S. 1, 12 (1990)). "Courts have obviated that difficulty, however, by insisting on a preliminary showing of **only** those facts accessible to the plaintiff." <u>Krinsky v. Doe 6</u>, 159 Cal. App. 4th 1154, 1171 (2008) (citing <u>Cahill, supra</u>) (emphasis added). "Indeed, the need to know the

identity of the defendant in order to pursue a claim will usually be deemed 'essential to a fair resolution of [a] lawsuit.'" ZL Techs., Inc. v. Does 1-7, 13 Cal. App. 5th 603, 633, (2017) (quoting Digital Music News LLC v. Superior Court, 226 Cal. App .4th 216, 228, (2014)). Along those lines, courts have found numerous contexts "where the veil of anonymity must be drawn aside to afford a victim redress for the anonymous speaker's" harm. Digital Music News LLC v. Superior Ct., 226 Cal. App. 4th 216, 230 (2014) (citing Krinsky v. Doe 6, supra, 159 Cal. App. 4th at 1166-1167, 1173 (defamation); Roth v. United States, 354 U.S. 476 (1957) (obscenity); Beauharnais v. Illinois, 343 U.S. 250, 266 (1952) (libel); Harper & Row v. Nation Enterprises, 471 U.S. 539, 555-556 (1985) (copyright infringement); Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 563-564 (1980) (misleading or commercial speech); Chaplinsky v. State of New Hampshire, 315 U.S. 568, 573 (1942) (use of "fighting words")). In SI03, Inc. v. Bodybuilding.com, LLC, the Ninth Circuit reversed and remanded a district court's denial of a motion to compel holding that "[t]he degree of scrutiny we give to impositions on speech varies depending on the circumstances and type of speech at issue" and that "[t]o characterize the speech at issue here, we must know the true identities of the speakers." 441 F. App'x 431, 431-32 (9th Cir. 2011) (internal quotations omitted). The principle is simple: a plaintiff should not be forced to prove what cannot be known until after discovery is granted.

In other words, when a plaintiff has otherwise set forth a *prima facie* case of defamation, the law does not withhold the only mechanism (a subpoena) by which the plaintiff could uncover proof of the speaker's knowledge or reckless disregard for the truth. See id. To do so would effectively immunize anonymous defamers, making it impossible for even the most meritorious claims to proceed if the plaintiff happens to be a public figure. The First Amendment does not demand such a perverse result.

Respondents' authorities do not compel a different conclusion. Meta relies on out-of-circuit cases like Blossoms & Blooms, Inc. v. Doe, 2022 WL 3030788 (E.D. Pa. July 29, 2022), which denied a subpoena *only because* the plaintiffs in that case "failed to state

a *prima facie* case, so they are unquestionably not entitled to subpoena information." <u>Id.</u> at *7. But Pennsylvania's approach is not binding here, and in any event <u>Blossoms & Blooms</u> is distinguishable as it involved *only* a garden-variety negative post, not a concerted fraudulent smear campaign. <u>Id.</u>

In fact, <u>Castro v. Doe</u>, cited by Respondents overwhelmingly *supports* Petitioners' motion to compel. In <u>Castro</u>, the court held that "[t]o satisfy the actual malice standard, a public figure must demonstrate a writer published the statements at issue "with knowledge that [such statements] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." <u>Castro</u>, 2023 WL 9232964 at *5 (quoting <u>N.Y. Times Co. v. Sullivan</u>, 376 U.S. 254, 280 (1964)). The court then held that because the plaintiff "alleges Defendants 'published false and defamatory statements not once, but repeatedly over a substantial period of time,' that they 'knowingly and intentionally relied on and used unreliable sources to perpetuate the defamatory statements about [him],' and 'acted with actual malice in publishing the knowingly false information[,] this was "enough to satisfy the actual malice standard." <u>Castro</u>, 2023 WL 9232964 at *5 (citing <u>Bentley v. Bunton</u>, 94 S.W.3d 561, 591, 596 (Tex. 2002)).

Similarly, here, Respondents allege that the Doe Defendants published defamatory statements not once, but multiple times across multiple websites and social media accounts. Respondents allege that the Doe Defendants "made these statements with knowledge that they were false [or] with reckless disregard for their truth or falsity." (Compl. ¶163.) As in <u>Castro</u>, this is sufficient to plead actual malice.

Further, in granting the motion to compel, the court in <u>Castro</u> recognized that "the First Amendment does not protect tortious, defamatory, or libelous speech." <u>Castro</u>, 2023 WL 9232964 at *6 (citing <u>USA Techs., Inc. v. Doe</u>, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010); <u>Zuru, Inc. v. Glassdoor, Inc.</u>, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022); <u>In re Anonymous Online Speakers</u>, 661 F.3d 1168, 1173 (9th Cir. 2011).

Finally, the court in Castro recognized the impossibility of proving actual malice without discovery, stating "Castro's defamation claim almost surely won't make it off the

ground without Wikimedia's help. Wikimedia knows Chetsford's identity; Castro doesn't. And if Wikimedia doesn't identify Chetsford, Castro would be left without a means by which to 'vindicate his good name.' The discovery that Castro seeks, in other words, is critical to the success of his proposed defamation claim." <u>Castro</u>, 2023 WL 9232964 at *6 (quoting <u>Milkovich</u>, 497 U.S. at 12).

In sum, this Court should follow the sensible approach taken in <u>Ottinger</u>, <u>Cahill</u>, <u>Castro</u>, and similar cases: do not let an unknown tortfeasor hide behind the very ignorance created by their anonymity. Requiring Petitioners to *prove* actual malice now without even knowing the identity of the persons who posted the lies would be legally improper. It would effectively grant the anonymous defamer immunity and a premature victory, undermining New York's substantial interest in providing a remedy for reputational attacks. Petitioners have come forward with significant evidence and established a *prima facie* claim for defamation (<u>see</u> Mot., ECF No. 1), and that is all that should be required at this stage. The *question* of actual malice can be addressed once the perpetrators are identified and their communications and motives can be examined in discovery. Indeed, the Second Circuit has held that a public-figure plaintiff need only plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of actual malice." <u>Prince</u>, 634 F. Supp. 3d at 139. Petitioners easily clear that modest threshold here.

### D.    In the Alternative, the Coordinated Smear Campaign Supports a Strong Inference of Actual Malice

Should the Court determine that an actual malice showing is necessary even for discovery, Petitioners submit that the facts of this case readily give rise to a compelling inference of actual malice under New York law. Actual malice means the defendant made a defamatory statement "with knowledge that the statements were false or [made] with reckless disregard as to their veracity." <u>Biro v. Conde Nast</u>, 807 F.3d 541, 544 (2d Cir. 2015); <u>see also</u> <u>McDougal v. Fox News Network, LLC</u>, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020). Actual malice "may be proven by inferential and circumstantial evidence 'because it is a matter of the defendant's subjective mental state, revolves around facts

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

usually within the defendant's knowledge and control, and rarely is admitted' by the defendant." <u>Palin v. New York Times Co.</u>, 113 F.4th 245, 263 (2d Cir. 2024) (quoting <u>Dalbec v. Gentleman's Companion, Inc.</u>, 828 F.2d 921, 927 (2d Cir. 1987)). The Supreme Court has clarified that although "the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition, ... the defendant must have made the false publication with a high degree of awareness of ... probable falsity, or must have entertained serious doubts as to the truth of his publication." <u>Harte-Hanks Commc'ns, Inc. v. Connaughton</u>, 491 U.S. 657, 667 (1989) (internal quotation marks, citations, and alterations omitted). "Courts have noted various circumstances that may be probative of actual malice, including[,]" *inter alia*, where: "a story is fabricated or is based wholly on an unverified, anonymous source," and "the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation[.]" <u>Biro v. Conde Nast</u>, 963 F. Supp. 2d 255, 277 (S.D.N.Y. 2013), <u>aff'd</u>, 807 F.3d 541 (2d Cir. 2015), and <u>aff'd,</u> 622 F. App'x 67 (2d Cir. 2015) (quoting <u>Behar</u>, 238 F.3d at 174 (citing <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731, (1968))).

Further, all signs point to the anonymous posts being part of a deliberate, premeditated smear campaign, not a good-faith mistake or mere negligence. "[W]hether the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation is relevant to a showing that the defendant harbored actual malice." <u>Goldfarb v. Channel One Russia</u>, 663 F. Supp. 3d 280, 310 (S.D.N.Y. 2023) (internal citations omitted).

As detailed in Petitioners' Motion, the record shows that multiple platforms were marshaled in tandem to spread the same false narrative about Jones. This was not an organic outburst of online commentary by random individuals; it was a synchronized operation to assassinate Jones's character across the internet. The coordinated nature of this attack strongly implies *knowledge* and *intent*. Whoever is behind the scheme took the time to create multiple sites, craft consistent false content, and promote it widely; such conduct is utterly inconsistent with any honest belief in the truth of the allegations. <u>See</u> <u>St.</u>

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENA*

Amant, 390 U.S. at 732 ("[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.").

If the anonymous speaker(s) had any legitimate evidence for their claims, they presumably would not need to hide behind fake personas and a web of websites, nor would they need to resort to sensational and patently dubious accusations. The sheer extremity and specificity of the false charges, combined with the cloak-and-dagger delivery, permits the reasonable conclusion that the speaker posted them either *knowing* they were false or with a high degree of awareness that the claims were baseless. In such circumstances, the Supreme Court has explained, "it is likely that the [defendant's] inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the published statements. Harte-Hanks Commc'ns, Inc., 491 U.S. at 692.

Here, the anonymous campaign against Jones is, if anything, even more suggestive of malice. The false posts about Jones appeared prior to an article attacking Jones that was orchestrated in part by her professional rivals (former associates who had much to gain by destroying her reputation). Those individuals would have firsthand knowledge that these lurid accusations are false or grossly distorted. Thus, unlike a typical media defendant who might claim negligence or sloppy sourcing, the likely culprits here had every motive to lie and no credible basis for what they published. See Behar, 238 F.3d at 174 (approving a district court's finding that "bias would be relevant to show a purposeful avoidance of the truth if it were coupled with evidence of an extreme departure from standard investigative techniques"). Such calculated defamation for personal gain is the paradigm of actual malice. See Babb v. Minder, 806 F.2d 749, 755 (7th Cir. 1986) ("[R]eckless conduct may be evidenced in part by failure to investigate thoroughly and verify the facts ... particularly where the material is peculiarly harmful or damaging to the plaintiff's reputation or good name." (internal quotation marks and citation omitted)). At the very least, Petitioners have more than met the pleading-stage requirement of alleging facts that "raise a reasonable expectation that discovery will reveal evidence of actual malice." Prince, 634 F. Supp. 3d at 139. In fact, discovery is likely to yield direct evidence of malice such as

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

communications among the conspirators revealing they knew Jones hadn't done the things they accused her of, or that they set out to "bury" her with no regard for the truth (consistent with allegations already made in the underlying SDNY action).

Finally, personal animosity can bolster an inference of malice when accompanied by evidence of falsity. See Celle v. Filipino Rep. Enters. Inc., 209 F.3d 163, 190 (2d Cir. 2000) (Jacobs, J., dissenting) ("Considering the evidence of ill will Pelayo felt towards Celle, a reasonable juror could conclude that Pelayo knowingly and recklessly ignored the probable falsity of the story and printed it."). Here, everything about the smear campaign screams of personal vendetta: the attackers hijacked Jones's own name to spread the defamation, and timed their campaign with an ex-employee's plans to steal clients. This context further supports a finding that the defamers were not innocently mistaken and that they acted with the "reckless disregard" of people determined to inflict damage, without regard for the truth.

In sum, should the Court reach the issue of actual malice, Petitioners have satisfied their burden by identifying enough circumstantial evidence for a factfinder to conclude the anonymous statements were made with knowing or reckless falsity. This is all that is required at this stage.

## III.    CONCLUSION

Petitioners have demonstrated a *prima facie* case of defamation and have overcome Respondents' First Amendment objection. Jones is a private figure entitled to the ordinary protections of defamation law, and even if a heightened standard did apply, it would be unfair to enforce it pre-discovery, especially given the strong indicia of actual malice apparent here. The Court should therefore grant the motion to compel and order Meta and

/ /

/ /

/ /

/ /

/ /

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*

Pinterest to comply with the subpoenas, so that the architects of this defamatory smear campaign can be identified and held to account.


Dated: July 16, 2025                    Respectfully submitted,

                                        **UMHOFER, MITCHELL & KING LLP**

                            By:    /s/ *Matthew Donald Umhofer*
                                   Matthew Donald Umhofer
                                   Jonas P. Mann

                                   *Attorneys for Petitioners Stephanie Jones*
                                   *and Jonesworks LLC*

*PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL*
*COMPLIANCE WITH THIRD-PARTY SUBPOENA*