UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE JONES, et al.,<br><br>Petitioners,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Respondents. | Case No. 25-mc-80165-TSH<br><br>**ORDER RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Pending before the Court is Stephanie Jones and Jonesworks LLC's (collectively, "Petitioners") Motion to Compel compliance with two subpoenas issued in *Jones, et al. v. Abel, et al.*, No. 1:25-cv-00779-UA (the "New York action"), a defamation case pending in the United States District Court for the Southern District of New York. ECF No. 1 ("Mot."). Petitioners served non-parties Meta Platforms, Inc. ("Meta") and Pinterest, Inc. ("Pinterest") (collectively, "Respondents") with subpoenas, requesting user account information for social media accounts associated with anonymous defendants in the New York action (the "Doe Defendants"). Mot. at 3–4. Respondents object to the subpoenas on First Amendment grounds. ECF Nos. 1-4, 1-6. The Court finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.

## II. BACKGROUND

### A. Factual Background

Petitioners Stephanie Jones ("Jones") and Jonesworks LLC bring the New York action against several defendants, including the Doe Defendants. Declaration of Jonas P. Mann in Support of Motion to Compel ("Mann Decl."), Ex. 1 ("Compl."), at 1 (ECF No. 1-2). Jonesworks

1   LLC, a Delaware limited liability company, "is an internationally recognized public relations

2   firm." Compl. ¶ 17.  Jones, a Connecticut resident, "is a highly respected public relations expert

3   who focuses on corporate and personal publicity" and the founder of Jonesworks. *Id.* ¶¶ 2, 18;

4   Declaration of Stephanie Jones ("Jones Decl.") ¶¶ 1–2 (ECF No. 1-16).  Petitioners served third-

5   party subpoenas (the "Subpoenas") on Respondents seeking user account information for social

6   media accounts associated with the Doe Defendants.  Mot. at 4.  Meta is subject to jurisdiction in

7   this Court based on its headquarters in Menlo Park, California.  *Id.* at 11:2–4; *see* ECF No. 1-4

8   (conceding jurisdiction).  Pinterest is subject to jurisdiction in this Court based on its headquarters

9   in San Francisco, California.  Mot. at 11:2–4; *see* ECF No. 1-6 (conceding jurisdiction).

10         Overall, Petitioners allege that the Doe Defendants' "true identities are unknown to

11   Petitioners" and that the Doe Defendants "created multiple defamatory websites and social media

12   accounts promoting those websites" as part of a "coordinated, multi-prong smear campaign"

13   against Petitioners.  Mot. at 3:9–17.  Petitioners seek "basic user account information identifying

14   who created the defamatory accounts" from Respondents.  *Id.* at 4:5–7.

15         **1.**     **The Underlying New York Action**

16         Petitioners allege the following in their underlying complaint.  The New York action arises

17   out of a coordinated smear campaign against Petitioners—by defendants Jennifer Abel, Melissa

18   Nathan, Justin Baldoni, Wayfarer Studios LLC, and the Doe Defendants—where defendants

19   "secretly conspired for months to publicly and privately attack [Petitioners], to breach multiple

20   contracts and induce contractual breaches, and to steal clients and business prospects." Compl. ¶

21   1.  Defendant Baldoni is an actor who co-starred in a film with Blake Lively that was released in

22   August 2024; Defendant Wayfarer is Baldoni's movie production company.  *Id.* ¶¶ 2–4.  At that

23   time, Baldoni feared that "allegations of misogynistic and toxic on-set behavior" would become

24   public and turned to Defendant Abel—who was an employee of Jonesworks at that time—to

25   protect his reputation.  *Id.* ¶ 3.  Abel, along with Defendant Nathan, schemed to "bury" and

26   "destroy" Lively to protect Baldoni.  *Id.* ¶ 4.  Nathan runs her own firm, The Agency Group PR,

27   which she launched in January 2024.  *Id.* ¶ 45.

28         Abel and Nathan hid their plan to destroy Lively from Jones and simultaneously worked to

United States District Court
Northern District of California

"[t]ear[] down Jones's reputation to take her clients and enrich themselves upon Abel's planned departure from Jonesworks." *Id.* ¶ 4. Abel and Nathan also worked with their media contacts to plant negative stories about Petitioners, including a *Business Insider* article, published on August 15, 2024, that amplified one of the disparaging websites that was posted by the Doe Defendants. *Id.* ¶¶ 7, 88. On August 25, 2024, *Business Insider* published a second article that "favorably touted Baldoni's hiring of Nathan to shepherd him through this crisis." *Id.* ¶ 91.

Jones terminated Abel from Jonesworks in August 2024, when Jones learned about the secret plan, and following Abel's theft of "more than 70 proprietary and sensitive business documents and additional client leads from Jonesworks." *Id.* ¶ 13. Abel "immediately opened shop at her own competing firm," taking Baldoni and Wayfarer with her as clients of Abel's new firm. *Id.*

### 2. Allegations Against The Doe Defendants

Petitioners allege the following in their underlying complaint. As part of the coordinated smear campaign against Petitioners, the Doe Defendants, who "are unknown individuals," "created and published the defamatory websites www.stephaniejonesleaks.com and www.stephaniejoneslies.com, as well as more than a dozen fake social media accounts and dark web accounts that defamed Jones and Jonesworks." *Id.* ¶ 23.

In parallel with the *Business Insider* articles, the Doe Defendants

> who, on information and belief, were acting in concert with Abel and Nathan, published two false and defamatory websites about Jones and Jonesworks (the 'Websites'). First, in the summer of 2024, the Doe Defendants created and posted the webpage www.stephaniejonesleaks.com, which was hosted by Hostinger International Ltd. Then, after that website was taken down, in or around September 2024, the Doe Defendants created and posted the webpage www.stephaniejoneslies.com, which is hosted by NameCheap, Inc., and still remains publicly available. Both Websites were viewed, and continue to be viewed, by numerous third parties, including residents of New York County.

*Id.* ¶ 92. The Websites published by the Doe Defendants contained several false statements, including the following statements:

  a. Jones bullied Jonesworks employees.

  b. Jones and Jonesworks interfered with the employment prospects of

3

       former Jonesworks' employees.

       c. Jones and Jonesworks leaked confidential client information.

       d. Jones and Jonesworks coerce clients into taking actions that are not in those clients' best interests.

       e. Jones and Jonesworks interfere with their clients' ability to do business.

*Id.* ¶¶ 157, 159, 161. The false statements included:

       a. Accusing Jones of 'years of non-stop verbal and emotional abuse' and 'horrific treatment in the workplace;'

       b. Jones 'doesn't understand how to truly do PR outside of leaking her own clients' secrets;'

       c. Jones 'does not fight for her clients but, she does fight with them. Crying, screaming, keeping them hostage;'

       d. 'Stephanie Jones takes clients hostage;'

       e. 'Not only does she break confidentiality, she willingly does regardless of the possible damage this kind of behavior might cause;'

       f. Implying that Jones was 'hacking' the defamatory websites.

*Id.* ¶ 160. The false statements constitute defamation *per se* because "they tended to cause harm to Jones' and Jonesworks' reputations and business interests." *Id.* ¶ 162. The Doe Defendants "made these statements with knowledge that they were false, with reckless disregard for their truth or falsity, or, at a minimum, negligently." *Id.* ¶ 163. The false statements caused harm to Petitioners' reputations "in the public relations industry and among potential clients." *Id.* ¶ 165.

       Jones makes the following averments in her Declaration. In May 2024, Jones discovered the Websites created by the Doe Defendants which made false accusations about her. Jones Decl. ¶ 3; *see* Mann Decl., Ex. 12 (Internet Archives stephaniejonesleaks.com Website) (ECF No. 1-13). The content on the Websites was nearly identical, containing many of the same false statements. Jones Decl. ¶ 7. At that time, Jones also discovered that "multiple fake social-media accounts were created that echoed the defamatory language of the websites and amplified links to them." *Id.* ¶ 4. As with the Websites, Jones has not been able to determine the identity of the Doe Defendants who created the defamatory social media accounts. *Id.* ¶ 8.

       The Facebook account created by the Doe Defendants bears the name Stephanie Jones

4

(https://www.facebook.com/people/Stephanie-Jones/61559205100286/); the account

> falsely states that 'Stephanie Jones serves legal letters based on trumped up claims. She resorts to threats both personal and professional.' This account links to stephaniejonesleaks.com and bears a logo with the words 'Stephanie Jones Leaks' that it shares with both stephaniejonesleaks.com and stephaniejoneslies.com.

*Id.* ¶ 5; *see* Mann Decl., Ex. 13 (Facebook Account) (ECF No. 1-14).

The Pinterest account created by the Doe Defendants ("stephaniejonesleaks")

> also links to the stephaniejonesleaks.com website (https://www.pinterest.com/stephaniejonesleaks/). The account profile falsely states 'Stephanie Jones is known to leak information about her clients to press, so that she can "save the day" for them and inspire their gratitude.' This account links to stephaniejonesleaks.com and bears a logo with the words 'Stephanie Jones Leaks' that it shares with both stephaniejonesleaks.com and stephaniejoneslies.com.

Jones Decl. ¶ 6; *see* Mann Decl., Ex. 14 (Pinterest Account) (ECF No. 1-15).

**B.      Procedural Background**

Petitioners commenced the New York action on December 24, 2024, filing a complaint against the following defendants: Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios, LLC, and John Does 1–10 (the "Doe Defendants").[1] Compl. at 1 (ECF No. 1-2). Petitioners allege one cause of action against the Doe Defendants under New York law: Defamation. *Id.* ¶¶ 156–66. Each of the named defendants filed an answer to the complaint. *See* Mann Decl., Exs. 8 (Abel Answer) (ECF No. 1-9), 9 (Nathan Answer) (ECF No. 1-10), 10 (Baldoni Answer) (ECF No. 1-11), 11 (Wayfarer Answer) (ECF No. 1-12).

Petitioners served third-party subpoenas on Respondents (the "Subpoenas") seeking user account information for social media accounts associated with the Doe Defendants. Mot. at 4. On March 7, 2025, Petitioners served a Subpoena on Respondent Meta. *See* Mann Decl., Ex. 2 (Meta Subpoena) (ECF No. 1-3). The Subpoena contained one request for document production:

REQUEST FOR PRODUCTION NO. 1:

---

[1] Petitioners originally filed their complaint in the New York State Supreme Court, County of New York. On January 27, 2025, defendants removed the case to the Southern District of New York. *See Jones, et al. v. Abel, et al.*, Case No. 1:25-cv-00779-UA, at ECF No. 1 (Notice of Removal).

> All basic user information regarding the Facebook account at https://www.facebook.com/people/Stephanie-Jones/61559205100286/ including the user's name, physical address, phone number, e-mail address, and account login and usage history (including IP addresses and user location data).

*Id.*

On March 11, 2025, Petitioners served a Subpoena on Respondent Pinterest. *See* Mann Decl., Ex. 4 (Pinterest Subpoena) (ECF No. 1-5). The Subpoena contained three requests for document production:

> REQUEST FOR PRODUCTION NO. 1:
>
> All communications and documents between Pinterest, Inc. and the owner of the account "stephaniejonesleaks" including but not limited to any principal, agent, or employee of the owner of the account, or its affiliates.
>
> REQUEST FOR PRODUCTION NO. 2:
>
> Any agreement entered into between Pinterest, Inc. and the owner of the account "stephaniejonesleaks" including but not limited to any Terms of Service or License Agreement.
>
> REQUEST FOR PRODUCTION NO. 3:
>
> All subscriber information for the account "stephaniejonesleaks" including but not limited to: (a) the name(s), address(es), telephone number(s), and email address(es) provided during the registration process (b) any identification documents, verification materials, or correspondence submitted in connection with the account's registration or verification, and; (c) any documents reflecting changes to account registration details over time.

*Id.*

Respondents each objected to their respective Subpoenas on, *inter alia*, First Amendment grounds. *See* Mann Decl., Exs. 3 (Meta Objections) (ECF No. 1-4), 5 (Pinterest Objections) (ECF No. 1-6). Additionally, two non-party individuals, Breanna Butler Koslow and Katherine Case, objected to the Subpoenas through counsel, stating:

> Based upon our review of these subpoenas, they solicit private and personal identifying information of our clients. As a result, we object to the subpoenas to the extent they call for the production of our clients' personal data.

Mann Decl., Exs. 6 (ECF No. 1-7), 7 (ECF No. 1-8). Ms. Koslow and Ms. Case "work or have

1  worked for The Agency Group PR, run by Melissa Nathan." Mot. at 8:12–19.

2      On June 25, 2025, Petitioners filed their instant Motion to Compel, requesting the Court
3  order Respondents to comply with the third-party Subpoenas. ECF No. 1 ("Mot."). Respondents
4  each filed Oppositions on July 9, 2025. ECF No. 9 ("Meta Opp."); ECF No. 8 ("Pinterest Opp.").
5  Petitioners filed a Reply on July 16, 2025. ECF No. 11 ("Reply").

### III.  LEGAL STANDARD

    Federal Rule of Civil Procedure 45 governs discovery of non-parties. The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-mc-80062-JSC, 2016 WL 3162218, *2 (N.D. Cal. June 7, 2016) (citing 1970 Adv. Comm. Note, Fed. R. Civ. P. 45; Fed. R. Civ. P. 34(a)). Rule 26 permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

    The Court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Id.* at 26(b)(2)(C). Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Id.* at 45(d)(3)(A).

    Once a non-party objects to a subpoena, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an

1  order compelling production or inspection." *Id.* at 45(d)(2)(B)(i). On a motion to compel
2  compliance, the moving party

> must set forth each request in full, followed immediately by the objections and/or responses thereto. For each such request, the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.

Civ. L.R 37-2. Further, district courts have discretion over whether to grant a motion to compel discovery. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 677 (9th Cir. 2018).

### IV.   DISCUSSION

This matter concerns the tension between protecting the right to anonymous speech and protecting the right to redress reputational harm caused by defamatory speech. Pursuant to the Free Speech Clause of the First Amendment, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. In general, anonymous speech receives full First Amendment protection. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). In comparison, defamatory speech receives no First Amendment protection; however, what constitutes defamatory speech depends on several factors. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–45 (1974). Sometimes, as here, these tenets collide; in that case, "the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Smythe v. Does*, No. 15-mc-80292-LB, 2016 WL 54125, *2 (N.D. Cal. Jan. 5, 2016) (citation omitted); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue.").

Here, Petitioners allege that the Doe Defendants created defamatory Websites and social media accounts on Facebook and Pinterest; as such, Petitioners seek from Respondents the identity of the Doe Defendants to hold them accountable for harm caused to Petitioners' reputations. Mot. at 3:9–17, 7:4–18, 17:22–24. Respondents oppose Petitioners' Motion to Compel on First Amendment grounds. Meta Opp. at 1:9–11; Pinterest Opp. at 1:7–13. Respondents do not dispute that Petitioners' Subpoenas otherwise meet the requirements under

1  Rule 45.

2  Petitioners argue that (1) "[u]sers have no First Amendment protection for account
3  ownership information"; and (2) even if the First Amendment applies, "Petitioners have
4  established a *prima facie* case for defamation and the balancing of interests weighs heavily in
5  favor of Petitioners." Mot. at 4:18–22. Respondents contend that (1) "the subscriber information
6  at issue here is presumptively protected by the First Amendment"; and (2) "Petitioners have failed
7  to make a *prima facie* showing of their defamation claims." Meta Opp. at 5:25–26, 9:12–13;
8  Pinterest Opp. at 6:2–3, 9:15–16.

9  In sum, the Court concludes that the user account information sought by Petitioners'
10 Subpoenas is presumptively protected by the First Amendment, that Petitioners have established a
11 *prima facie* defamation claim against the Doe Defendants, and that the balance of equities weighs
12 in favor of compelling Respondents to disclose the identities of the Doe Defendants. Therefore,
13 Respondents must disclose the information requested in the Subpoenas related to the identities of
14 the Doe Defendants. However, Pinterest is not required to disclose the user agreements requested
15 in the Pinterest Subpoena.[2]

16 **A.   First Amendment Implications**

17 Petitioners argue that their Subpoenas request "user information, which is not subject to
18 First Amendment protection." Mot. at 10:11–12. Respondents contend that Petitioners cite no
19 authority for their incorrect proposition that "subscriber information is wholly unprotected by the
20 First Amendment." Meta Opp. at 4:4–6; Pinterest Opp. at 4:12–14. Petitioners counter that
21 "[w]hile Respondents point to minor differences in the factual underpinnings of Petitioners'
22 cases," courts hold that "exposure of some identifying data does not violate the First
23 Amendment." Reply at 2:5–10.

---

[2] Pinterest contends that Petitioners' "request for Pinterest's user agreements is irrelevant and unduly burdensome." Pinterest Opp. at 10:1–2. Other than citing to it in the procedural background, Petitioners do not address this portion of the Pinterest Subpoena in their Motion, nor do Petitioners address Pinterest's argument regarding Pinterest's user agreements in their Reply. *See* Mot. at 7:23–26; *see generally* Reply. Therefore, the Court **DENIES** Petitioners' Motion to Compel with respect to the Pinterest user agreements (Pinterest Subpoena, Request For Production No. 2) (ECF No. 1-5).

9

The First Amendment protects the rights of individuals to speak anonymously. *See McIntyre*, 514 U.S. at 342 ("[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."). The Ninth Circuit recognizes that the decision to remain anonymous extends to anonymous speech made on the Internet. *See Anonymous Online Speakers*, 661 F.3d at 1173 ("[O]nline speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.") (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)). "When adjudicating discovery requests that would unmask an anonymous speaker, then, courts must consider the First Amendment implications of disclosure—just as they would when adjudicating any other discovery request that risks infringing First Amendment rights." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022). Moreover, the Ninth Circuit has recognized that Internet platforms can assert the First Amendment rights of their users, based on the close relationship between the platform and its users and the "genuine obstacles" users face in asserting their rights to anonymity. *In re Grand Jury Subpoena*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017).

Here, the user account information sought by Petitioners implicates the First Amendment. Petitioners' attempt to draw a distinction between anonymous speech and anonymous speaker identity fails. The two are inextricably intertwined—a speaker can only speak anonymously when their identity is not known. Indeed, the Supreme Court has said as much, holding that "[a]n author's *decision to remain anonymous*" is protected by the First Amendment. *McIntyre*, 514 U.S. at 342 (emphasis added). And, contrary to Petitioners' assertion, the Ninth Circuit has not "repeatedly held that the First Amendment does not protect subscriber information from discovery." Mot. at 11:26–28. In fact, the Ninth Circuit has recognized the opposite, that a constitutional right to online anonymity exists under the First Amendment. *In re Gliner*, 133 F.4th 927, 933 (9th Cir. 2025). Therefore, the Doe Defendants' identities are presumptively protected by the First Amendment.

None of Petitioners' cited cases support the proposition "that the First Amendment does

10

not protect the subscriber information of an anonymous speaker." Mot. at 12:1–2. In *London v. Does 1-4*, the Ninth Circuit recognized—as acknowledged by Petitioners—that "exposure of some identifying data does not violate the First Amendment." Reply at 2:5–10; *see London*, 279 F. App'x 513, 515 (9th Cir. 2008). The *London* court held that under the facts of that case, the First Amendment was not violated by release of identifying user data. *See London*, 279 F. App'x at 515 ("Appellants cite no authority for the proposition that the First Amendment bars release of identifying data for email accounts used to solicit sex partners on the Internet."). Similarly, in *Smythe v. Does 1-10*, the court held that under the facts of that case, the First Amendment did not preclude plaintiff from obtaining information related to anonymous user identities. Mot. at 12:24–13:1; *see Smythe*, No. CV 15-4801-R, 2015 WL 12819173, at *2 (C.D. Cal. Sept. 25, 2015) ("While the First Amendment provides some rights regarding anonymity, it is not a blanket shield from liability under the law for all speech."). In other words, *Smythe* stands for the unremarkable proposition that the right to speak anonymously is not absolute. *Anonymous Online Speakers*, 661 F.3d at 1173; *see also* Mot. at 17:9–12 (quoting *Smythe*, 2016 WL 54125, at *2) (stating "right to anonymity is not absolute").

      The remaining cases cited to by Petitioners are factually inapposite. First, *United States v. Meta Platforms, Inc.* did not involve user account information associated with a U.S. citizen or a noncitizen present in the United States. Mot. at 12:12–19; *see Meta*, No. 23-mc-80249-PHK, 2023 WL 8438579, at *6 (N.D. Cal. Dec. 5, 2023) ("In this case, however, there is nothing in the present record indicating the unidentified defendant(s) in the underlying Korean civil action are entitled to First Amendment protections."). This is a salient distinction. *See Gliner*, 133 F.4th at 934 (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020)) ("Foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution, including those under the First Amendment.") (cleaned up). In contrast, here, there is no indication that the Doe Defendants lack First Amendment protections. Second, *Chevron Corp. v. Donziger* did not even implicate the right to anonymous speech because the petitioner did not seek to link the identities of anonymous users with statements made by them. Mot. at 12:19–23; *see Chevron,* No. 12–mc–80237-CRB (NC), 2013 WL 4536808, at *7 (N.D. Cal. Aug. 22, 2013)

11

("Unlike in *Anonymous Online Speakers* and *2TheMart.com*, Chevron is not seeking the content of emails or a link between the Doe movants' identities and particular statements made by them."). But here, Petitioners' goal is to link anonymous users to allegedly defamatory statements made by those users. Finally, the portion of *People of State of Cal. v. F.C.C.* that Petitioners cite to concerns the compelled speech doctrine, a completely different First Amendment issue than anonymous speech. Reply at 2:12–18; *see People of State of Cal.*, 75 F.3d 1350, 1362 (9th Cir. 1996) (discussing the First Amendment right to remain silent and holding that "[e]xposure of a telephone number does not violate the First Amendment right not to speak").

Accordingly, as discussed below, because the user account information sought by Petitioners' Subpoenas implicates the First Amendment, the Court must assess the merits of Petitioners' defamation claim.

**B.     First Amendment Analysis**

Petitioners argue that even if the First Amendment is implicated, the Court should enforce the Subpoenas because Petitioners have made out a *prima facie* defamation claim and because the balancing of interests requires enforcing the Subpoenas. Mot. at 13:6–8. Respondents contend that the Subpoenas are not enforceable because Petitioners fail to make a *prima facie* defamation claim. Meta Opp. at 6:4–10; Pinterest Opp. at 6:8–14.

When third-party providers such as Meta and Pinterest receive subpoenas to produce identifying information of posters of anonymous speech, courts apply the appropriate First Amendment standard to ensure that a person's right to anonymous speech is protected. *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Anonymous Online Speakers*, 661 F.3d at 1172–77). District courts have discretion to choose the proper standard in a given case, based on the nature of the speech at issue. *Anonymous Online Speakers*, 661 F.3d at 1174–77.

Courts in this district employ a two-step inquiry "when adjudicating motions that would result in the unmasking of anonymous speakers." *DMCA*, 608 F. Supp. 3d at 876. "First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest

12

at stake." *Id.* (citing *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760–61 (N.J. Super. Ct. App. Div. 2001); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974–75 (N.D. Cal. 2005)).  Thus, when adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should

> (1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim.

*Id.*

Here, there is no dispute that Petitioners have attempted to notify the Doe Defendants that Petitioners seek their identity.  All named defendants in the New York action filed answers indicating that they did not create the Websites at issue.  *See* Mot. at 11:4–21 (citing Mann Decl., Exs. 8–11).  Petitioners also received objections to their Subpoenas from two non-party individuals, Koslow and Case.  *Id.* at 13:18–22; *see* Mann Decl., Exs. 6–7.  Petitioners argue that from these facts, "[i]t can reasonably be inferred that Respondents notified the creators of the Facebook and Pinterest accounts at issue who then served non-party objections."  Mot. at 13:18–22.  Respondents do not challenge Petitioners' contentions nor rebut their arguments.  Therefore, because Petitioners establish that they attempted to notify the Doe Defendants, the first element of the Northern District's test is satisfied.  *See Anonymous Online Speakers*, 661 F.3d at 1176 (noting that an attempt to give notice satisfies the notice requirement even under the strictest standard for unmasking an anonymous speaker).

The parties' dispute turns on whether Petitioners can satisfy the other two elements required for enforcement of the Subpoenas, which the Court addresses in turn below.

### 1.     Underlying Defamation Claim

Petitioners argue that they have established a *prima facie* claim for defamation *per se* against the Doe Defendants under New York law.  Mot. at 15:6–16:20.  Respondents contend that Petitioners are limited-purpose public figures; as such, Petitioners cannot make a *prima facie* showing because their Motion does not "address the actual malice standard that applies to

13

defamation claims brought by limited purpose public figures." Meta Opp. at 6:4–10; Pinterest Opp. at 6:8–14.

To demonstrate a *prima facie* case of defamation in the context of a First Amendment challenge, Petitioners must "adduce, without the aid of discovery, competent evidence addressing all the inferences of fact" for "all elements of [the] claim." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020) (applying standard as set forth in *Highfields*, 385 F. Supp. 2d at 969); *accord Dendrite*, 775 A.2d at 760. "Allegation and speculation are insufficient." *Highfields*, 385 F. Supp. 2d at 975; *see id.* ("The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests."). This standard is appropriate where, as here, expressly political speech is not involved because it strikes a balance between the importance of anonymous speech and the need for relevant discovery. *See Anonymous Online Speakers*, 661 F.3d at 1175–77 (noting that summary judgment standard is appropriate for disputes involving political speech). After all, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

The law governing Petitioners' underlying defamation claim controls the *prima facie* claim analysis. *See Rule 45 Subpoenas*, 337 F.R.D. at 649–50 (applying New York law to underlying defamation claim). Under New York law, the elements of defamation are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999). A statement is defamatory *per se* if it "(1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business, or profession; (3) imputes that the plaintiff has a loathsome disease; or (4) imputes unchastity to a woman." *Laguerre v. Maurice*, 138 N.Y.S.3d 123, 129 (N.Y. App. Div. 2020); *see Frechtman v. Gutterman*, 979 N.Y.S.2d 58, 61 (N.Y. App. Div. 2014) ("A statement is defamatory on its face when it suggests improper performance of one's

14

1  professional duties or unprofessional conduct."). "In evaluating whether a cause of action for

2  defamation is successfully pleaded, the words must be construed in the context of the entire

3  statement or publication as a whole, tested against the understanding of the average reader, and if

4  not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made

5  so by a strained or artificial construction." *Dillon*, 704 N.Y.S.2d at 5 (cleaned up).

6      Here, "Respondents do not dispute that Petitioners established a *prima facie* case for

7  defamation as applied to private figures." Reply at 2:22–24. The Court agrees that Petitioners

8  establish such a claim because Petitioners adduce competent evidence—in the form of allegations

9  in their complaint, Jones's Declaration, screenshots and account updates for the social media

10  accounts at issue, and an Internet archive for the Websites at issue—supporting each element of

11  their defamation *per se* claim against the Doe Defendants. *See* ECF Nos. 1-2, 1-13, 1-14, 1-15, 1-

12  16. Petitioners' evidence supports their allegations that the Doe Defendants published false

13  statements of fact that Petitioners improperly performed their professional duties. *Cf. Deer*

14  *Consumer Prods., Inc. v. Little*, 938 N.Y.S.2d 767, 782 (N.Y. Sup. Ct. 2012); *see Gottwald v.*

15  *Sebert*, 220 N.E.3d 621, 627 (N.Y. 2023) ("In New York, the accepted standard for private figures

16  is negligence.") (cleaned up).

17      The dispositive issue is whether Petitioners must proffer evidence of actual malice to

18  establish a *prima facie* claim. As discussed below, the Court concludes that they do not.

19      **a.    Public Figure Status**

20      Respondents argue that Petitioners are limited-purpose public figures "with respect to the

21  Baldoni-Lively dispute." Meta Opp. at 6:4–10; Pinterest Opp. at 6:8–14. Petitioners counter that

22  Respondents provide no evidence showing that Petitioners are limited-purpose public figures.

23  Reply at 2:19–26.

24      A defamation plaintiff's status as a public or private figure determines the appropriate

25  standard of liability in a defamation action. *Gertz*, 418 U.S. at 342–47; *see Gottwald*, 220 N.E.3d

26  at 627 (explaining that actual malice is required for public figures but that "[i]n New York, the

27  accepted standard for private figures is negligence"). "[P]ublic figure status is a matter of degree."

28  *Gottwald*, 220 N.E.3d at 627 (cleaned up). A plaintiff may be a general-purpose public figure "for

United States District Court
Northern District of California

15

1    all purposes and in all contexts" or a limited-purpose public figure "for a limited range of issues."
2    *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 43 (N.Y. App. Div. 2021) (citing *Gertz*, 418 U.S. at 351).
3    One becomes a limited-purpose public figure "by virtue of his purposeful activity amounting to a
4    thrusting of his personality into the 'vortex' of an important public controversy." *Id.* (citation
5    omitted); *see also Gertz*, 418 U.S. at 345 ("More commonly, those classed as public figures have
6    thrust themselves to the forefront of particular public controversies in order to influence the
7    resolution of the issues involved.").

8    To establish that a plaintiff is a limited-purpose public figure, the "defendant must show
9    the plaintiff has: (1) successfully invited public attention to his views in an effort to influence
10   others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a
11   public controversy related to the subject of the litigation; (3) assumed a position of prominence in
12   the public controversy; and (4) maintained regular and continuing access to the media." *Sebert*,
13   148 N.Y.S.3d at 44 (quoting *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136–37 (2d Cir.
14   1984)). The party asserting that the plaintiff is a public figure must establish that the plaintiff was
15   a public figure at the time the defamatory statements were published. *Krauss v. Globe Int'l, Inc.*,
16   674 N.Y.S.2d 662, 663–64 (N.Y. App. Div. 1998).

17   "Whether or not a person or an organization is a public figure is a question of law for the
18   court to decide." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013) (cleaned up).
19   "Where the question whether a plaintiff is a public figure can be determined based upon the
20   pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage." *Id.*
21   (citation omitted).

22   Here, the Court concludes that Respondents fail to show that on this record, Petitioners are
23   limited-purpose public figures. Respondents assert that for the second and third elements of the
24   limited-purpose public figure test, "Petitioners have voluntarily injected themselves into the
25   Baldoni-Lively dispute and assumed a position of prominence in it." Meta Opp. at 7:20–22;
26   Pinterest Opp. at 7:24–26. Petitioners counter that "it is impossible for Petitioners to have invited
27   public attention, voluntarily injected themselves, or assumed a position of prominence in a public
28   controversy that had yet to exist at the time of the creation of the accounts at issue." Reply at

16

3:12–17 (internal quotations omitted).

The Court agrees with Petitioners that on this record, Respondents do not show that Petitioners voluntarily inserted themselves into a public controversy because "the appearance of the websites and social media accounts at issue predates the Baldoni-Lively dispute by months." Reply at 3:2–4. Jones avers that she learned of the existence of the Websites and social media accounts associated with the Doe Defendants in May 2024. *Id.* at 3:4–5 (citing Jones Decl. ¶¶ 3–4). According to Jones, based on account activity, the Facebook social media account was created no later than May 2024. *Id.* at 3:5–11 (citing Declaration of Jonas P. Mann in Support of Reply ("Mann Decl. #2"), Exs. 1–3 (ECF Nos. 11-2–11-4)). In their complaint in the New York action, Petitioners allege that "Abel and Nathan's scheming began in July 2024 and Jones did not learn about it until August 2024." *Id.* at 3:12–13 (citing Compl. ¶¶ 7–9, 13). And Lively filed her complaint against Defendant Baldoni on December 31, 2024. *Id.* at 3:13–14 (citing Mann Decl. #2, Ex. 4 (ECF No. 11-5)).

In their Oppositions, Respondents point to four items that purportedly evince Petitioners' insertion into the Baldoni-Lively dispute, dated between August 8, 2024, and August 21, 2024.[3] Meta Opp. at 7:20–8:15 (citing ECF No. 1-9 at 51–52, 54–55 (Counterclaims of Jennifer Abel); ECF No. 1-12 at 36, 38–40 (Counterclaims of Wayfarer Studios LLC)); Pinterest Opp. at 7:24–8:18 (citing same). But—even if these items establish that Petitioners injected themselves into a public controversy in August 2024—Respondents' Oppositions are devoid of evidence showing that Petitioners were involved in any public controversy in May 2024, when the defamatory statements first appeared. Therefore, because Respondents fail to meet their burden in showing that Petitioners were public figures at the time the defamatory statements were published, Petitioners cannot be treated as public figures. *Krauss*, 674 N.Y.S.2d at 663–64.

Accordingly, the Court does not treat Petitioners as public figures for the purposes of their instant Motion to Compel.

---

[3] Petitioners object to Respondents' purported evidence "pursuant to F.R.E. 901" because it constitutes "unverified pleadings and references to websites without authentication." Reply at 1 n.1. Because the Court does not find Respondents' arguments persuasive regarding this purported evidence, the Court need not rule on Petitioners' objection.

17

### b. Actual Malice

Respondents argue that Petitioners' failure to address actual malice is fatal to their Motion. Meta Opp. at 6:4–10; Pinterest Opp. at 6:8–14. Petitioners respond that (1) the actual malice standard does not apply because Petitioners are private figures; (2) even if it does apply at trial, proof of actual malice is not required at the subpoena stage; and (3) even if it does apply at the subpoena stage, Petitioners provide "powerful circumstantial evidence of actual malice under New York defamation law." Reply at 1:12–2:3.

Where a defamation plaintiff is a public figure, the plaintiff "must prove the allegedly defamatory statements were made with 'actual malice.'" *Gottwald*, 220 N.E.3d at 627. Thus, a court must first determine that a plaintiff is a public figure before it analyzes whether a complaint sufficiently pleads malice. *Biro*, 963 F. Supp. 2d at 270.

Here, because the Court finds that on this record Respondents have not carried their burden in demonstrating that Petitioners are public figures, the Court concludes that Petitioners are not required to adduce evidence of actual malice as part of Petitioners' *prima facie* claim. *See id.* ("Thus, before proceeding further, it must be determined whether Biro is a limited purpose public figure for the purposes of this action, or at least whether such a determination can be made at the pleadings stage in this litigation.").

Accordingly, the Court concludes that Petitioners have established a *prima facie* case of defamation *per se* against the Doe Defendants. Given the Court's ruling, it need not address whether Petitioners have sufficiently alleged actual malice in their underlying complaint or elsewhere.

### 2. Balancing Test

As Petitioners can demonstrate a *prima facie* defamation case, the Court must balance the need for the discovery against the First Amendment interest at stake. *DMCA*, 608 F. Supp. 3d at 876. Petitioners argue that "[t]he balance weighs heavily in favor of Petitioners" because disclosing the Doe Defendants' identities would cause little harm to their First Amendment rights and "Petitioners have no alternative method of determining the true identity of the Doe Defendants." Mot. at 16:21–17:24. Respondents do not address the balancing test in their

Oppositions.

In "evaluating the First Amendment rights of anonymous Internet users in the context of a third-party civil subpoena," district courts have followed the approach taken in *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001). *In re Reddit, Inc.*, 671 F. Supp. 3d 1022, 1025 (N.D. Cal. 2023) (citing *Anonymous Online Speakers*, 661 F.3d at 1176 (describing the *2TheMart.com* test)). Under that approach, the standard for disclosing the identity of an anonymous *defendant* requires "a showing of, at least, a good faith basis for bringing the lawsuit" and "some showing of the compelling need for the discovery sought." *2TheMart.com*, 140 F. Supp. 2d at 1094–95. In comparison, "[t]he standard for disclosing the identity of a non-party *witness* must be higher[.]" *Id.* at 1095 (emphasis in original); *see id.* (articulating four-part test "for evaluating a civil subpoena that seeks the identity of an anonymous Internet user who is not a party to the underlying litigation").

Here, because Petitioners seek identities of anonymous defendants, the lower standard from *2TheMart.com* applies. Overall, there is a conflict between Petitioners' need for the Doe Defendants' identities and Respondents' desire to protect the Doe Defendants' First Amendment rights. But Petitioners have established a strong need for the Doe Defendants' identities. First, there is no indication that Petitioners issued the Subpoenas in bad faith or for an improper purpose, and Respondents do not argue otherwise. Second, Petitioners have established a compelling need for the discovery they seek. The Doe Defendants' identities relate to Petitioners' core defamation claim in the New York action—Petitioners allege that the Doe Defendants published numerous defamatory statements about them across multiple Websites and social media accounts. Compl. ¶¶ 23, 92. And the discovery that Petitioners seek is critical to the success of their proposed defamation claim. *See 2TheMart.com*, 140 F. Supp. 2d at 1094–95 ("the need for the information was especially great because the information sought concerned J. Doe *defendants*") (emphasis in original). Petitioners' defamation claim almost surely won't make it off the ground without Respondents' help because only Respondents know the Doe Defendants' identities. *Cf. Castro*, 2023 WL 9232964, at *6. In sum, Petitioners will be left without a means by which to "vindicate [their] good name" unless Respondents identify the Doe Defendants. *Milkovich v. Lorain J. Co.*,

19

497 U.S. 1, 12 (1990). Moreover, despite their efforts, Petitioners have been unable to obtain the Doe Defendants' identities from other sources, including from the named defendants in the New York action. *See* Mot. at 11:4–21 (citing Mann Decl., Exs. 8–11), 13:18–22. Therefore, the two *2TheMart.com* factors are met which favors compelling discovery.

Although Respondents have an interest in protecting their users' anonymity, Respondents have not convinced the Court that this interest should be prioritized over Petitioners' interest in protecting their reputations. Importantly, the First Amendment does not protect tortious, defamatory, or libelous speech. *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010) (citing *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005)).

Accordingly, in balancing the need for the discovery against the First Amendment interest at stake, the Court finds Petitioners' need to identify the Doe Defendants weighs in favor of compelling disclosure.

## V.  CONCLUSION

For the reasons stated above, the Court **DENIES** Petitioners' Motion to Compel with respect to the Pinterest user agreements (Pinterest Subpoena, Request For Production No. 2). The Court **GRANTS** Petitioners' Motion to Compel with respect to all other requests in the Subpoenas.

**IT IS SO ORDERED.**

Dated: August 11, 2025

THOMAS S. HIXSON
United States Magistrate Judge